Rockingham
No. 2007-163

DONNA RICHARD

v.

GOOD LUCK TRAILER COURT, INC. & a.

Argued: January 17, 2008
Opinion Issued: March 21, 2008

*MacMillan Law Offices*, of Bradford, Massachusetts (*Thomas K. MacMillan* on the brief and orally), for the plaintiff.

*Hamilton Law Offices, P.L.L.C.*, of Salem (*Joseph L. Hamilton* on the brief and orally), for the defendants.

BRODERICK, C.J. The plaintiff, Donna Richard, appeals an order entered after a bench trial in the Superior Court (*McHugh*, J.) ruling that the defendants, Good Luck Trailer Court, Inc. and George Tareila, did not breach either a contract for the sale of real property or an implied covenant of good faith. We affirm.

In the spring of 2004, the plaintiff liquidated two pieces of investment real estate in Haverhill, Massachusetts. In accordance with the federal "like-kind exchange" law, *see* 26 U.S.C.A. § 1031 (West 2002 & Supp. 2007), she designated defendant Good Luck Trailer Court, Inc. (trailer court) in Salem as potential replacement property.

On July 1, 2004, the plaintiff and defendant Tareila, the primary officer, director and shareholder of the trailer court, signed a purchase and sale agreement for its sale for $1,800,000. The agreement provided that

> [t]ransfer of title shall occur on or before September 10, 2004. . . . However, the closing date is contingent upon compliance with RSA 205-A regulating the sale of mobile home parks. If necessary, this agreement shall be extended to a date that complies with the

requirements of RSA 205-A. SELLER to begin RSA 205-A notification process immediately. SELLER will provide BUYER with copies of all notices sent and proof of mailing and receipt by tenants when mailed and all return receipts received by SELLER.

In addition, the agreement provided that "SELLER will notify all tenants in accordance with RSA 205-A and inform BUYER of any tenants having exercised any rights to purchase any or all assets hereunder."

On August 31, Tareila informed the plaintiff by telephone that the tenants' association had made an offer in response to the RSA chapter 205-A notice but, with no guarantee of financing and a closing date proposed for late September or mid-October, the offer was unacceptable to him. Tareila "wonder[ed] out loud" during the telephone conversation whether the plaintiff could outbid the tenants so that he could sell the property to her. She declined, because she thought a new bid might trigger a new notice date to the tenants' association. On September 2, Tareila telephoned the plaintiff again and told her that he had decided to sell the property to her and wanted to close as soon as possible.

On September 3, defendants' attorney faxed a letter to plaintiff's counsel to confirm that Tareila had decided to proceed with the sale to the plaintiff. Defendants' attorney then faxed correspondence to counsel for the tenants' association detailing numerous reasons why their offer was not accepted. However, later that same day, defendants' attorney informed plaintiff's counsel that the tenants' association might be filing a modification to their offer and that the plaintiff should not plan on a closing on September 8. On September 8, defendants' attorney sent correspondence to plaintiff's counsel stating that "[a]s required by RSA 205-A:21, we have negotiated in good faith with [the tenants' association] and will be selling the mobile home park to [it] on or before September 16, 2004." On September 16, Tareila executed a purchase and sale agreement with the tenants' association for $1,800,000. On or about September 20, the tenants' association secured financing for the transaction.

The plaintiff filed suit for breach of her purchase and sale agreement as well as breach of an implied covenant of good faith and fair dealing. Following a bench trial, the trial court ruled that there was no breach of the purchase and sale agreement, which was conditioned upon compliance with RSA chapter 205-A. Because the tenants had availed themselves of their rights under RSA 205-A:21, the trial court concluded that the defendants had no alternative but to sell the trailer court to them. The trial court also ruled that the defendants' decision to sell the property to the tenants was not made in bad faith.

On appeal, the plaintiff argues that the trial court erred: (1) in failing to find that the defendants breached her purchase and sale agreement and an implied covenant of good faith and fair dealing; (2) in finding that the provisions of RSA 205-A:21 commanded a sale of the trailer park to the tenants; and (3) in failing to award her any damages.

"We will affirm the trial court's factual findings unless they are unsupported by the evidence and we will affirm the trial court's legal rulings unless they are erroneous as a matter of law." *Krigsman v. Progressive N. Ins. Co.*, 151 N.H. 643, 645 (2005); *see Realco Equities, Inc. v. John Hancock Mut. Life Ins. Co.*, 130 N.H. 345, 348 (1988).

RSA 205-A:21 (Supp. 2007) provides:

> I. No manufactured housing park owner shall make a final unconditional acceptance of any offer for the sale or transfer of a manufactured housing park without first giving 60 days' notice:

>> (a) To each tenant:

>> (1) That the owner intends to sell the manufactured housing park; and

>> (2) Of the price, terms and conditions of an acceptable offer the park owner has received to sell the park or the price, terms and conditions for which the park owner intends to sell the park. This notice shall include a copy of the signed written offer which sets forth a description of the property to be purchased and the price, terms and conditions of the acceptable offer.

> . . . .

> II. During the notice period required under paragraph I, the manufactured housing park owner shall consider any offer received from the tenants or a tenants' association, if any, and the owner shall negotiate in good faith with the tenants concerning a potential purchase. If during the notice period, the tenants decide to make an offer to purchase the manufactured housing park, such offer shall be evidenced by a purchase and sale agreement; however, the tenants have a reasonable time beyond the 60-day period, if necessary, to obtain financing for the purchase.

RSA 205-A:22 (2000) provides:

> I. The owner of a manufactured housing park who sells or transfers a park and willfully fails to comply with RSA 205-A:21

shall be liable to the tenants in the amount of $10,000 or 10 percent of the total sales price. . . . This civil penalty shall constitute the sole and exclusive remedy for violation of RSA 205-A:21 and the failure by a park owner to comply with said section shall not affect the validity of any sale or transfer of title nor shall such noncompliance constitute grounds to set aside a sale or transfer in any court proceedings. . . .

II. Lack of knowledge of this section by a park owner shall not be deemed to be a defense to an action for damages based on failure to comply with RSA 205-A:21, I.

The plaintiff first argues that, on September 3, when defendants' attorney faxed correspondence to counsel for the tenants' association advising that the tenants' offer was rejected, this notice "effectively acknowledged compliance [with] the notice requirements of the statute." Accordingly, she maintains, when the defendants changed their mind about closing with the plaintiff later that day, their withdrawal from the purchase and sale agreement was ineffective. Thus, the plaintiff argues, the defendants, "having reaffirmed and revived the agreement with the Plaintiff [on September 3], [were] obligated to consummate the deal with her and their refusal to do so resulted in a breach." We disagree.

Defendants' attorney testified at trial that after the tenants' association made an offer to purchase the trailer court, the defendants "had an obligation under the statute to negotiate in good faith with them." As for the defendants' written rejection of the tenants' association's offer on September 3, stating that "we will be proceeding with the sale to the first purchaser next week," defendants' attorney testified that such language "was put in as part of [his] negotiating stance with [the tenants] in order for them to do what [the defendants] thought was necessary under the statute, or call it off and let [the defendants] go forward with the first contract." He testified that the purpose of the fax sent to plaintiff's counsel on September 3 was to keep him posted as to the status of negotiations with the tenants' association. Indeed, plaintiff's counsel conceded that this latter fax did not promise a sale to the plaintiff.

██ ██ "Contracts are . . . specific agreements to take specific steps to accomplish particular results, and those commitments are the central measure of each party's responsibility." *Town of Allenstown v. National Cas. Co.*, 36 F.3d 229, 234 (1st Cir. 1994). The purchase and sale agreement between the plaintiff and Tareila specifically made closing "contingent upon compliance with RSA 205-A." The record establishes that the correspondence that took place between August 31 and September 3, 2004, repre-

sented negotiations between the defendants and the tenants' association consistent with the defendants' obligation to comply with the requirements of RSA chapter 205-A, as required by the purchase and sale agreement. The fact that the defendants sold the trailer court to the tenants' association did not constitute a breach of contract, but, rather, was an event expressly contemplated in the purchase and sale agreement. Furthermore, the plaintiff testified that she was aware that RSA chapter 205-A made the sale of the trailer court contingent upon the tenants not purchasing the property and that the statute required the defendants to negotiate in good faith with the tenants. Plaintiff's counsel testified that he was familiar with the requirements of RSA chapter 205-A and that he advised the plaintiff that there was a possibility that her transaction would not go through. We hold that the record supports the trial court's conclusion that the defendants' sale of the trailer court to the tenants' association was not a breach of contract with the plaintiff.

The plaintiff also argues that the defendants breached an implied warranty of good faith and fair dealing. Specifically, she contends that "[o]nce the Defendants had decided to reject the Tenants' offer and advised the Plaintiff of that fact, as well as the notification to the Tenants['] counsel of same and the request for an expedited closing, the Plaintiff claims that he was now bound to her." In concluding that the defendants did not act in bad faith in any aspect of their dealings with the plaintiff, the trial court found that "[t]he defendant disclosed the notice to purchase from the tenants as soon as it was received, and the mere fact that he expressed the desire to sell to the plaintiff in no way reaffirms or changes any of the language in the only writing signed by these parties, the purchase and sale agreement dated July 1, 2004."

■■■ "In every agreement there exists an implied covenant that each of the parties will act in good faith and deal fairly with the other." *Seaward Constr. Co. v. City of Rochester*, 118 N.H. 128, 129 (1978). "[T]he obligation of good faith performance is better understood simply as excluding behavior inconsistent with common standards of decency, fairness and reasonableness, and with the parties' agreed-upon common purposes and justified expectations." *Centronics Corp. v. Genicom Corp.*, 132 N.H. 133, 140 (1989). As set forth above in the discussion regarding breach of contract, Tareila signed a purchase and sale agreement containing a requirement that he comply with RSA chapter 205-A and, upon receiving an offer from the tenants' association, his attorney negotiated with them as required under the statute and ultimately sold the trailer court to them. The record supports the trial court's findings that "[a]ll conversations were cordial and designed towards completing the real estate transaction as soon

as possible after the 60 day tenant notice provision expired. The defendant was genuine in these discussions, he truly wanted to sell the park to the plaintiff." Based upon the written purchase and sale agreement, however, the plaintiff's "justified expectations" necessarily included that the defendants might sell the trailer court to the tenants' association if it made a competitive offer within the sixty-day notice period. We affirm the trial court's ruling that the defendants did not act in bad faith.

■ The plaintiff also argues that the trial court erred "by determining that the statute required a sale of the trailer park to the Tenant's Association," noting that "[n]owhere in RSA 205-A:21 does it provide that a park owner must sell to its tenants if they make an offer relatively similar to that of a third party." RSA chapter 205-A clearly provides tenants of a manufactured housing park a right to make an offer to purchase the park after the owner has entered into a purchase and sale agreement with a third party. The statute also requires that the park owner consider an offer from the tenants and negotiate with them in good faith. Thus, at a minimum, the statute requires that any offer to purchase a manufactured housing park by a third party be conditioned upon the tenants not making a comparable offer within the sixty-day period following notice.

■ "After the formal notice provisions in RSA 205-A:21, I, which include notice of price, terms and conditions, RSA 205-A:21, II envisions an opportunity for the tenants to make an offer and, in such event, charges the owner with the obligation to consider the tenant offer and to negotiate in good faith toward a potential tenant purchase." *Whispering Springs Tenant Assoc. v. Barrett*, 137 N.H. 203, 206 (1993). We need not decide whether RSA 205-A:21 "required" a sale to the tenants' association in this case or whether the trial court erred in so concluding; the transaction that occurred here complied with the statute. The plaintiff does not dispute that before the sixty-day notice period expired, the tenants' association forwarded a purchase and sale agreement to the owner. Indeed, as the plaintiff concedes, so long as the requirements of the statute are met, "it would appear that [the park owner] would be free to sell the park to either a third party or the Tenants Association, so long as his actions were in good faith."

Because of our holding, we need not address the plaintiff's final argument that the trial court erred in failing to award her any damages.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.