KELLY, Judge.
Appellant/Cross-Appellee Vila & Son Landscaping Corporation (Vila) challenges the trial court’s order that sets aside the jury verdict in its favor and orders a new trial. Appellee/Cross-Appellant Posen Construction, Inc. (Posen), also challenges the order granting a new trial and argues that the verdict should be directed in its favor because, under the subcontract’s termination for convenience provisions, Posen was entitled to terminate the subcontract at any time, with or without cause. We reverse the order granting a new trial and direct the trial court to enter judgment in favor of Posen.
Posen entered into a construction contract with the Florida Department of Transportation (FDOT). It then subcontracted with Vila to perform the landscaping and irrigation portion of Posen’s work on the construction project. FDOT approved the subcontract between Posen and Vila. Subsequently, Posen sought and obtained a better price for the same work from another subcontractor. As a result, Posen terminated the contract with Vila and awarded the work to the subcontractor who agreed to perform Vila’s work at a lower price.
Alleging that the termination was wrongful, Vila sued Posen for breach of contract. Posen argued that the termination for convenience provision in the subcontract gave it the right to terminate the subcontract. The termination for convenience clause provided:
32. Termination for Convenience. The performance of the Work may be terminated at any time in whole, or from time to time in part, by Contractor for its convenience. Any such termination shall be effected by delivery to Subcontractor of written notice (“Notice of Termination”) specifying the extent to which performance of the Work is terminated and the date upon which termination becomes effective.
After receipt of a Notice of Termination, and except as otherwise directed by Contractor, Subcontractor shall, in good faith, and to the best of its ability, do all things necessary, in the light of such notice and of such requests in implementation thereof as Contractor may *565 make, to assure the efficient, proper closeout of the terminated Work....
In the event of such termination, there shall be an equitable reduction of the Subcontract Sum to reflect reduction in Work, and no cost incurred after the effective date of the Notice of Termination shall be reimbursable unless it relates to carry out the unterminated portion of the Work, or taking required closeout measures. In no event shall Subcontractor be entitled to lost or anticipated profits, incidental or consequential damages, or lost overhead for portions of the Work Subcontractor did not complete^]
Vila countered that Posen was obligated to exercise its right to terminate for convenience in good faith and that terminating the contract solely because it found a subcontractor that would perform Vila’s work at a lower price constituted bad faith and thus was a breach of the contract. Ultimately, the issue of whether Posen had wrongfully terminated the subcontract was submitted to a jury. The jury found that Posen had breached the contract, and it awarded damages to Vila for lost profits while declining to award damages for restocking and for coordinating and scheduling work on the subcontract.
Posen filed a motion asking for judgment notwithstanding the verdict both as to liability and damages. As to liability, Posen continued to maintain that the termination for convenience provision gave it the right to terminate the contract with or without cause. As to damages, Posen argued that the contract precluded Vila’s claim for lost profits, that Vila’s calculations, which the jury accepted, were not in accord with Florida law, and that Vila’s claim was too speculative. After considering the motion, the trial court ordered a new trial — something neither party had sought.
It appears from the trial court’s order that it was under the impression Posen’s motion had requested a new trial as an alternative to a judgment notwithstanding the verdict. The order addressed only Posen’s liability argument and was silent on the issue of damages. The court indicated it was ordering a new trial rather than entering a judgment for Posen because it had concluded that Vila could prevail if it was permitted to establish that Posen had acted in bad faith. For reasons not pertinent to this appeal, the trial court apparently believed that Vila had not had the opportunity to properly argue this issue.
In this appeal, both parties challenge the trial court’s decision to grant a new trial. After noting that Posen never sought a new trial, Vila contends that there is nothing to retry because the issue of bad faith was tried and argued to the jury, and the jury found in Vila’s favor. Accordingly, Vila contends the order granting the new trial should be reversed and the jury’s verdict reinstated. Posen likewise argues that the issue of bad faith was fully litigated and that there is no reason for a new trial. However, it contends that the order is correct to the extent that it sets aside the jury’s verdict. As it did in the trial court, Posen maintains that Vila’s claim should never have been submitted to the jury because as a matter of law, the termination for convenience clause gave it the right to terminate the subcontract with or without cause. Because the question before us is one of law, we review the issue de novo.
Vila’s argument that Posen wrongfully terminated the contract is three-fold. Vila first argues that by terminating the contract solely to obtain a better price, Posen acted in bad faith and therefore cannot rely on the termination for convenience provision. In support of this contention *566 Vila relies on eases discussing the limits placed on the federal government’s right to terminate for convenience. See, e.g., Krygoski Constr. Co. v. United States, 94 F.3d 1537 (Fed.Cir.1996) (explaining that when tainted by bad faith or an abuse of contracting discretion, a termination for convenience causes a breach of contract). Second, Vila argues that when Posen terminated to obtain a better price, it breached the implied covenants of good faith and fair dealing. Third, Vila argues that without the imposition of good faith limitations, the termination for convenience provision reduces the contract to an illusory promise, lacking in consideration. We reject each of these contentions.
The concept of terminating a contract for convenience dates back to the Civil War where it developed as a tool for the United States government to avoid costly military procurements that were rendered unnecessary by changing wartime technology or by the cessation of conflict. Id. at 1540. The government promulgated rules that allowed it, under certain circumstances, to terminate contracts and settle with the contractor for partial performance. Id. This practice continued after World Wars I and II pursuant to new statutory and regulatory provisions for contract termination. Id. at 1541. For our purposes, it is unnecessary to further detail the history of termination for convenience clauses beyond noting that over time the use of these provisions, which allow the government to terminate a contract when it determines that it is in its best interest to do so, expanded to all types of federal government contracts, not simply military procurement contracts. See id. Termination for convenience clauses are now required in most government contracts, and these clauses give the government broad powers to terminate a contract. When invoked, they limit the damages a contractor may recover to the cost of goods or services already provided. See Gen. Dynamics Corp. v. United States, — U.S. -, 131 S.Ct. 1900, 1908, 179 L.Ed.2d 957 (2011) (“A termination for convenience ordinarily entitles a contractor to recover its incurred costs of performance, reasonable termination expenses, and a reasonable profit on the work performed.”). That is, they preclude the recovery of expectation damages such as lost profits.
This case involves a contract between two private parties. Thus, we find Vila’s reliance on case law that discusses the constraints placed on federal contracting officers to be misplaced. As explained in Questar Builders, Inc. v. CB Flooring, LLC, 410 Md. 241, 978 A.2d 651, 669 (2009):
While the history of the clause’s development in the context of federal procurement is helpful to our consideration of the present case in that it illuminates the clause’s purpose as a risk-allocating tool, the case-law supporting such a broad right in federal contracts obviously is of limited value when interpreting a contract between private parties. Simply stated, for political reasons, the federal government stands in a position entirely uncomparable to that of a private person.
Further, although the Supreme Court has held that the federal government generally stands in the shoes of a private party when it enters into a contract, federal tribunals rely less on the common law of contracts than on the extensive body of laws and regulations promulgated by Congress and agencies to govern federal contracts. See id.; see also Tecom, Inc. v. United States, 66 Fed. Cl. 736 (2005) (highlighting the distinction between the common law concept of the implied covenant of good faith and the *567 concept of good faith applied when considering the actions of a public official in the discharge of his duties); Krygoski, 94 F.3d at 1542-44 (justifying the adoption of a bad faith standard in federal termination for convenience cases in light of specific procurement laws and policies adopted by the federal government). Although consistent with the common law of contracts, courts placed limits on the government’s broad discretion to terminate for convenience so that its contracts would not fail for lack of consideration, and one of those limits is that the government may not exercise its discretion in bad faith; the concept of “bad faith” as used in these cases refers to subjective bad faith. See, e.g., Kalvar Corp. v. United States, 211 Ct.Cl. 192, 543 F.2d 1298 (1976) (explaining that to prove bad faith in terminating a contract the contractor must prove the government acted with the specific intent to harm the contractor or was motivated by malice or animus). In contrast, “bad faith” in the context of the common law notion of breach of the implied covenant of good faith does not require a showing of subjective bad faith. See, e.g., Sepe v. City of Safety Harbor, 761 So.2d 1182 (Fla. 2d DCA 2000) (explaining that the implied covenant of good faith is a mechanism to protect the contracting parties’ reasonable expectations); see also Tecom, 66 Fed.Cl. at 770 (explaining that bad intent is not an element of a breach of the implied covenant of good faith). For all these reasons, like the court in Questar, we find limited value in these federal procurement cases and look instead to common law contract principles as articulated by Florida’s courts.
Our view that these cases are not helpful to resolving this case is not altered by the fact that the cases upon which Vila relies most heavily cite termination for convenience done solely to obtain a better price as an example of bad faith. See, e.g., Krygoski, 94 F.3d at 1541. When mentioning termination to obtain a better price as an example of what might constitute bad faith, the cases Vila cites, such as Krygoski, relied on Torncello v. United States, 231 Ct.Cl. 20, 681 F.2d 756 (1982). Not only has the court of claims disavowed much of Torncello, the case is factually inapposite.
In Torncello, the government did not invoke the termination for convenience provision in its contract but rather relied on the doctrine of constructive termination for convenience. Constructive termination for convenience occurs when “the government has stopped or curtailed a contractor’s performance for reasons that turn out to be questionable or invalid. Constructively, the clause can justify the government’s actions, avoid breach and limit liability.” Id. at 759. In other words, the government is deemed to have invoked the termination for convenience clause even though it did not, provided it could have availed itself of the clause at the time it terminated the contract. The Torncello court concluded that where there was a constructive termination for convenience the government essentially had an unfettered right to terminate that rendered the contract illusory. Id. at 764, 767-70, 772.
In reaching this conclusion, the court rejected the government’s argument that the contractual procedures for termination, such as written notice, provided sufficient consideration to sustain the contract. It rejected the argument because in the case before it the termination had been constructive and thus was not done pursuant to the contract. Id. at 770. Seeking to place some limit on the government’s power to terminate for convenience, that court ultimately concluded that the government’s ability to terminate for convenience was limited to instances where there was a change in the “circumstances of the bar *568 gain or the expectations of the parties.” Id. at 771. In subsequent cases, the court of claims has dismissed much of what it discussed in Tomcello and it clarified that bad faith, not changed circumstances, limits the government’s ability to terminate for convenience. Krygoski, 94 F.3d at 1541-42. It has construed Tomcello to stand for nothing more than the proposition that there cannot be a constructive termination for convenience where the government enters into a contract knowing it has no intention of fulfilling its promises. See id. at 1543-44.
It is not clear to us why Tomcello has ever been cited for the general proposition that terminating for convenience to obtain a better price is bad faith. The court was concerned with limiting the government’s power to terminate where there was a constructive termination for convenience. In this case, Posen invoked the termination for convenience provision of the parties’ contract and followed the procedures provided for under the contract, including supplying Vila with written notice. Assuming those procedures were adequate to supply consideration for the parties’ contract, there is no need to impose any additional limit, such as bad faith, as did the court in Tomcello.
Which brings us to Vila’s argument that without imposing such a limit here, the termination for convenience provision reduces the contract to an illusory promise lacking in consideration. In support of this argument, Vila again relies on Tom-cello; however, as we have explained, that case is factually inapposite. Vila also cites Harris Corp. v. Giesting & Associates, Inc., 297 F.3d 1270 (11th Cir.2002), which upheld a termination for convenience clause requiring sixty days’ written notice, and argues that because the contract here did not require advance notice of termination, it lacked consideration unless it is construed to prohibit bad faith termination. This argument fails because under Florida law a provision requiring written notice, such as that contained in the termination clause in question here, prevents the promise made by the party with the right of termination from being regarded as illusory in nature. See Wright & Seaton, Inc. v. Prescott, 420 So.2d 623, 626-27 (Fla. 4th DCA 1982); see also 1 Williston on Contracts § 105.
Vila has also argued that Posen breached the implied covenants of good faith and fair dealing when it terminated the subcontract to obtain a better price. Vila has not explained how this principle applies in this case but instead continues to rely on cases involving the government’s obligation to deal in good faith and in compliance with statutory regulations. See, e.g., RAM Eng’g & Constr., Inc. v. Univ. of Louisville, 127 S.W.3d 579 (Ky.2003). Vila has failed to recognize the standard required in determining whether the implied covenant of good faith and fair dealing has been breached, namely that a party to a contract has acted contrary to the reasonable expectations of the parties in performing the contract. See QBE Ins. Corp. v. Chalfonte Condo. Apt. Ass’n, 94 So.3d 541 (Fla.2012) (noting that the covenants of good faith and fair dealing are designed to protect “the reasonable expectations of the contracting parties” in light of the express terms of their agreement). Because Vila has not argued the proper standard, we are left to surmise why Po-sen’s action constitutes a breach. Given the plain language of the subcontract, it is not apparent to us how Posen’s decision to exercise the termination for convenience provision to obtain the services for a better price is contrary to “the reasonable expectations of the contracting parties.”
Accordingly, we reject Vila’s contention that it was entitled to a verdict in its favor *569 because Posen acted in bad faith when it terminated Vila’s contract. Because Vila did not establish that Posen wrongfully terminated the contract, we agree with Posen’s argument that the trial court erred when it ordered a new trial rather than entering a judgment in its favor on Vila’s claim for breach of contract.
Reversed and remanded for entry of a judgment in favor of Posen.
NORTHCUTT and DAVIS, JJ„ Concur.