# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0076, <u>Hate to Paint, LLC v. Ambrose Development, LLC & a.</u>, the court on November 13, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2).

The defendants, Ambrose Development, LLC and John Flatley, appeal an order of the Superior Court (<u>Honigberg</u>, J.) granting partial summary judgment to the plaintiff, Hate to Paint, LLC, and a final order following a bench trial in Superior Court (<u>Attorri</u>, J.) granting judgment and damages to Hate to Paint on its breach of contract claim. We reverse and remand.

The trial court found the following facts. Hate to Paint is a painting contractor that concentrates on multi-residential projects. In August 2019, Hate to Paint entered into a painting contract with Ambrose for an apartment project in Somersworth. Flatley owned the project and Ambrose was the developer (hereinafter, Ambrose and Flatley will be collectively referred to as Ambrose). Work was expected to commence in late 2019.

A year prior to contracting for the Somersworth project, the parties had contracted for painting a similar project in Merrimack. The plans and specifications for the two projects were almost identical other than their size: the Merrimack project consisted of four 48-unit buildings while the Somersworth project consisted of three. In addition, the per-unit cost in the Somersworth project contract was "significantly higher" than that for the Merrimack project.

In early January 2020, before Hate to Paint received notice to proceed with any work on the Somersworth project, Ambrose informed Hate to Paint that it was terminating the contract "for convenience" after an internal audit noted the higher price for that project compared to the Merrimack project. Ambrose invoked a provision of the contract that provided:

> <u>Termination for Convenience</u>: The General Contractor may terminate the Contract for convenience upon three (3) days prior written notice. In the event of such termination, the Contractor shall be entitled to receive payment for labor and materials

furnished through the date of termination. Contractor shall not be entitled to receive payment for any lost profits.

Stating that the contract required rebidding, Ambrose invited Hate to Paint to submit a new bid by January 17. Hate to Paint submitted three successively lower bids, each of which Ambrose rejected. Ultimately, Ambrose hired another contractor for the project. Ambrose reimbursed Hate to Paint $1,360 for paint that it had purchased for the project.

In May, Hate to Paint brought the instant action alleging, inter alia, breach of contract. Hate to Paint moved for summary judgment on the liability portion of its breach of contract claim, which the trial court granted. Following a bench trial, the court found that Hate to Paint had proved damages in the amount of $219,200. Ambrose now appeals.

"A breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." Audette v. Cummings, 165 N.H. 763, 767 (2013) (quotation omitted). "We will uphold a trial court's ruling in an action for breach of contract unless the decision was made without evidentiary support or was an unsustainable exercise of discretion." Id. (quotation omitted).

Ambrose first argues that the trial court erred in failing to enforce the contract's termination for convenience provision. The trial court ruled that to prevent the contract from being illusory, Ambrose's discretion under that provision must be limited by the implied covenant of good faith and fair dealing. It then ruled that Ambrose "breached the contract by invoking the termination for convenience clause in order to obtain a better bargain."

"In every agreement there exists an implied covenant that each of the parties will act in good faith and deal fairly with the other. The obligation of good faith performance is better understood simply as excluding behavior inconsistent with common standards of decency, fairness and reasonableness, and with the parties' agreed-upon common purposes and justified expectations." Richard v. Good Luck Trailer Court, 157 N.H. 65, 70 (2008) (quotations and brackets omitted). Hate to Paint contends, as the trial court ruled, that Ambrose's discretion under the termination for convenience provision "must be bridled by the implied obligation of good faith and fair dealing." We will assume, without deciding, that Ambrose's discretion under the "Termination for Convenience" provision was limited by that implied covenant.[1]

---

[1] The trial court relied upon Hobin v. Coldwell Banker Residential Affiliates, 144 N.H. 626 (2000), in concluding that the implied covenant of good faith and fair dealing would apply to contradict an express contractual grant of discretion only when necessary to protect an agreement which otherwise would be rendered illusory and unenforceable. Hobin was decided,

The trial court determined that Ambrose "breached the contract by invoking the termination for convenience clause in order to obtain a better bargain." Ambrose challenges that conclusion, arguing that "finding a better price is not by itself bad faith that avoids the enforceability of a termination-for-convenience clause." On the facts of this case, we agree.

We have stated that "courts cannot make better agreements than the parties themselves have entered into or rewrite contracts merely because they might operate harshly or inequitably." Moore v. Grau, 171 N.H. 190, 201 (2018) (quotation omitted). Here, the plain language of the contract expressly provides for termination for convenience upon three days' notice. "Convenience" is defined as the quality of being convenient. Random House Webster's Unabridged Dictionary at 443 (2d ed. 2001). "Convenient," in turn, is defined as "suitable or agreeable to the needs or purpose." Id.; see A.L. Prime Energy Consultant v. Mass. Bay Transp. Auth., 95 N.E.3d 547, 558 (Mass. 2018) ("'convenience' means the quality of being suitable to one's comfort, purposes, or needs" (quotation omitted)). Plainly, obtaining a better price is suitable to one's needs or purpose. See A.L. Prime Energy Consultant, 95 N.E.3d at 558 (conserving resources meets an important need). Given the plain, unambiguous language of the termination for convenience clause, it is not apparent to us how Ambrose's decision to exercise the termination for convenience provision to obtain the services for a better price is contrary to the parties' "justified expectations." Richard, 157 N.H. at 70; see Vila & Son Landscaping Corp. v. Posen Constr., Inc., 99 So. 3d 563, 568 (Fla. App. Ct. (2012).

We acknowledge that courts in other jurisdictions have concluded that exercising a termination for convenience clause to obtain a better price violates the implied covenant of good faith and fair dealing. See, e.g., Questar Builders, Inc. v. CB Flooring, LLC, 978 A.2d 651, 675 (Md. 2009) (stating that obligation to act in good faith and deal fairly prohibits party from terminating contract to recapture an opportunity that it lost upon entering the contract); Greer Properties, Inc. v. LaSalle Nat. Bank, 874 F.2d 457, 461 (7th Cir. 1989) (noting that if defendants exercised their discretion to terminate contract for the sale of real property "to obtain a better price from [another buyer], their action would have been in bad faith"). On the facts of this case, we are not persuaded. Here, the plain language of the termination for convenience clause put Hate to Paint on notice that Ambrose could terminate the contract upon three days' notice for its convenience, which in turn put Hate to Paint on notice that Ambrose could terminate the contract to conserve its resources. The burden of proving a breach of the implied covenant of good faith and fair dealing lay with Hate to Paint. The trial court made no findings suggesting, for example, that Ambrose acted in bad faith by entertaining an undisclosed intent to lock Hate

___

however, under California law. Hobin, 144 N.H. at 629. We need not decide today whether New Hampshire law accords with California law.

3

to Paint's price in place while they continued to seek other bids.  Furthermore, as Ambrose argues in its reply brief, by exercising its contractual right to terminate before Hate to Paint had invested substantial time and money, Ambrose minimized the amount of resources Hate to Paint devoted to the contract.[2]  We conclude that, on the record before us, by ruling that Ambrose violated an implied duty of good faith and fair dealing, the trial court in essence rewrote the parties' contract on the ground that it might operate harshly or inequitably.  This the court cannot do.  See Moore v. Grau, 171 N.H. at 190.  We conclude that the trial court erred in granting partial summary judgment on the ground that Ambrose violated an implied duty of good faith and fair dealing.  Accordingly, we reverse and remand.

Reversed and remanded.

MACDONALD, C.J., and COUNTWAY, J., concurred; BASSETT, J., concurred in the result only.

**Timothy A. Gudas,
Clerk**

---

[2] As noted above, Ambrose reimbursed Hate to Paint $1,360 for paint it had purchased for the project.

4