[No. 38006. Department One. December 30, 1965.]

E. F. LANO *et al., Appellants,* v. OSBERG CONSTRUCTION CO., *Respondent.*\*

\*Reported in 409 P.2d 466.

*Lester Stritmatter*, for appellants.

*Elliott, Lee, Carney & Thomas*, for respondent.

HUNTER, J.—This is an action for damages for wrongful termination of a subcontract to clear and grub a state highway right-of-way in Pacific County.

In November, 1958, defendant (respondent) Osberg Construction Company, as prime contractor, executed a contract with the state of Washington to construct a portion of the Tokeland-Raymond highway.

Plaintiffs (appellants) executed a subcontract with defendant covering the clearing and grubbing portion of the prime contract. The plaintiffs, who were primarily loggers, contracted with a third party to perform the clearing and grubbing after the removal of the timber.

The subcontract was on a form known as the A.G.C. (Associated General Contractors of America) subcontract. Plaintiffs used the same form in contracting with the third party. The pertinent provisions of the subcontract provide:

THE SUBCONTRACTOR AGREES:

. . . .

(b) To start work immediately when notified by the CONTRACTOR, and to complete the several portions and

the whole of the work herein sublet, at such times as will enable the CONTRACTOR to fully comply with the contract with the OWNER, and to be bound by any provisions in the MAIN CONTRACT with the OWNER for liquidated damages, if caused by SUBCONTRACTOR.

. . . .

(m) To commence and at all times to carry on, perform and complete this SUBCONTRACT to the full and complete satisfaction of the CONTRACTOR, and of the Architect or OWNER. It is specifically understood and agreed that in the event the CONTRACTOR shall at any time be of the opinion that the SUBCONTRACTOR is not proceeding with diligence and in such a manner as to satisfactorily complete said work within the required time, then and in that event the CONTRACTOR shall have the right, *after reasonable notice*, to take over said work and to complete the same at the cost and expense of the SUBCONTRACTOR, without prejudice to the CONTRACTOR's other rights or remedies for any loss or damage sustained. (Italics ours.)

Work commenced on the project in late November, 1958. Due partially to the swampy terrain of the first mile of the project, the clearing and grubbing advanced very slowly. In January and February, 1959, defendant expressed to the plaintiffs dissatisfaction with the progress of the grubbing and clearing. Plaintiffs, in turn, warned their subcontractor that they would terminate his contract if progress were not improved. Progress of the grubbing and clearing did not improve satisfactorily, and on March 24, 1959, plaintiffs terminated their contract with the third party and took over his employees and equipment. Plaintiffs continued with the grubbing and clearing operation until their subcontract with defendant was terminated on August 17, 1959.

On July 20, 1959, defendant's owner, Mr. Osberg, verbally notified plaintiffs of his dissatisfaction with their work progress and urged them to improve the same. Again, on August 4, 1959, plaintiffs were notified verbally that their contract would be terminated if work progress did not improve.

On August 6, 1959, a fire occurred on the project, shutting down work and causing cancellation of plaintiffs' burning

permit. The permit was reissued with additional requirements for firefighting equipment. Plaintiffs did not comply with the new requirements, despite defendant's urging them to do so and continue progress. On August 12, Osberg gave verbal notice to plaintiffs that their contract would be terminated on August 17, 1959, unless substantial improvement in the work progress were assured by then. This notice was confirmed by registered letter received by one of the plaintiffs on the evening of Thursday, August 13, 1959. The formal, written notice listed the following five conditions:

1. You have only six (6) men on the job.
2. Your fire permit has been cancelled due to your failure to take adequate preventions, thereby preventing you from further burning operations.
3. Much of your equipment is broken down and inoperable and is not being repaired.
4. You have made no effort to increase production and have insisted on working only 5 - 8 hour days per week.
5. You are having considerable labor difficulty and are being threatened with shutdowns by certain labor unions.

Plaintiffs' attention was directed to paragraph (m) of the subcontract, *supra*. The notice then stated:

unless the above conditions are *entirely corrected* and *you make satisfactory progress by Monday, August 17*, we shall immediately proceed, without further notice, to take over and complete the balance of the work covered by said Subcontract. (Italics ours.)

Conditions did not change by August 17, and on the morning of that day, defendant terminated plaintiffs' subcontract.

Plaintiffs brought suit for damages for breach of contract, and defendant cross-complained for damages for the plaintiffs breach. The trial court, sitting without a jury, granted a motion for segregation of the issues to try the issue of liability alone. The trial court then tried the case, made findings of fact and conclusions of law, and dismissed the action with prejudice, awarding the defendant its costs. Plaintiffs appeal.

█ Plaintiffs contend the trial court erred in approv-

ing the cancellation of the subcontract. They argue first that the evidence does not show a default upon their contract which would justify defendant's termination of the contract. We have carefully reviewed the entire record. The contract did not specify a completion date; the law, therefore, supplies the requirement that plaintiffs' progress must be reasonable under the circumstances. Although there is a conflict in the evidence regarding the many factors to which defendant points as justifying the declaration of default, our review of the record clearly shows substantial evidence to support the trial court's determination that plaintiffs were in default in the performance of the contract at the time the notice of termination was given on August 13, 1959.

Plaintiffs further contend that they were not given reasonable notice of termination of their contract, in violation of the requirement of such notice expressly set forth in the contract. We agree.

■ The subcontract provided that the contractor would have the right, *after reasonable notice*, to take over the grubbing and clearing. The contractor was bound to comply with that requirement in giving notice of termination. See, *e.g.*, Annotation, 107 A.L.R. 1035, 1044.

■ What constitutes notice must be determined from the facts and circumstances of each case. *Vance v. Mutual Gold Corp.*, 6 Wn.2d 466, 478, 108 P.2d 799 (1940). Black, Law Dictionary 1211 (4th ed.) defines reasonable notice as "Such notice or information of a fact as may fairly and properly be expected or required in the particular circumstances."

■ In the present case, the defendant warned and urged plaintiffs several times to speed their progress; however, none of these communications amounted to notice of termination. The formal, written notice received on August 13, 1959, was a conditional notice, an ultimatum which in effect stated: *either* entirely correct the listed conditions by August 17, *or* lose your contract. Upon receipt of this notice, plaintiffs had one business day and a weekend in which to meet the demands contained in the notice.

This was patently not enough time to permit a reasonable attempt to meet the demands. The notice was therefore unreasonable.

■ Defendant, however, argues that plaintiffs themselves set the standard for reasonable notice when they forfeited out their subcontractor on the same day they gave him notice. Plaintiffs' dealings with their subcontractor are, of course, irrelevant to the present question. Plaintiffs' subcontractor's rights are not at issue here.

■ Defendant also contends that plaintiffs acquiesced in the termination of their subcontract, and thereby indicated a willingness to accept the notice as reasonable. This is a non sequitur. The plaintiffs had a contractual right to reasonable notice. They could rely upon that right without requesting an extension of time or protesting the notice as given. Not having received a reasonable notice of termination, the plaintiffs could treat the contract as broken and desist from any further efforts to perform it. 12 Am. Jur. *Contracts* § 389.

■ Defendant contends that plaintiffs were in dire financial straits and would have been unable to extricate themselves even if they had been given more lengthy notice. The evidence does disclose that the plaintiffs were having financial difficulties; however, plaintiffs did testify that, given more time, they would have been able to secure adequate financing. Whether they could is sheer speculation. The only way defendant could have demonstrated the truth of its assertion would have been by giving plaintiffs a reasonable notice of termination, thereby providing them with an opportunity to secure additional financing.

Defendant further contends that it was faced with a critical timing problem, that it was rapidly losing the last good days of the summer while plaintiffs' progress slowed to a standstill. Assuming this to be a material contention, the record indicates a long-standing dissatisfaction with plaintiffs' progress. Defendant, better than anyone else, could see ahead to the position in which it would be if progress did not greatly improve by late summer. Thus, defendant cannot shift the blame for its delaying a decision

until the timing did not permit reasonable notice to be given in pursuance of the contractual requirement.

■ The defendant finally contends that the findings of fact, to which error was assigned by plaintiffs, were not set out verbatim in plaintiffs' brief, and therefore became verities. This rule does not apply where the findings constitute conclusions of law. *Kane v. Klos*, 50 Wn.2d 778, 788, 314 P.2d 672 (1957), and authorities cited therein. The evidence on the issue of reasonable notice is not in dispute. The trial court erred in concluding that the notice given to the plaintiffs of the termination of the contract was reasonable.

The judgment of the trial court dismissing the plaintiffs' action is reversed, and the cause is remanded for trial on the issue of damages only resulting from the breach of the plaintiffs' contract.

ROSELLINI, C. J., HILL and OTT, JJ., and BARNETT, J. Pro Tem., concur.

March 30, 1966. Petition for rehearing denied.