[No. 39950.    Department One.    December 11, 1969.]

E. F. LANO *et al., Appellants,* v. OSBERG CONSTRUCTION COMPANY, *Respondent.**

*Lester Stritmatter* and *Schumacher & Charette,* by *John W. Schumacher,* for appellants.

*Elliott, Lee, Carney, Thomas & Smart,* by *Fred T. Smart,* for respondent.

HAMILTON, J.—This is an appeal by plaintiffs from a judgment for damages entered in an action for wrongful termination of a highway construction subcontract. The issue on appeal is limited to the propriety of the trial court's allowance of a counterclaim interposed by defendant, Osberg Construction Company, arising out of an assignment of bonding company claims against plaintiff. We outline briefly the pertinent circumstances.

In late 1958, the defendant (respondent) entered into a contract with the State of Washington to construct a portion of the Tokeland-Raymond highway. Plaintiffs, in turn, executed a subcontract with defendant by the terms of which plaintiffs were to clear and grub certain portions of the proposed roadway. In so doing, plaintiffs were required

*Reported in 462 P.2d 923.

to post a performance bond in the amount of $78,500. To obtain the bond from the United Pacific Insurance Company, one E. C. Orton guaranteed plaintiffs' indemnity agreement with the bonding company.

Plaintiffs' progress on the job was unsatisfactory and defendant undertook to terminate the subcontract and pursuant thereto did take over completion of the work. Negotiations with the bonding company ensued and resulted in payments being made on the bond in the total sum of $40,000. The guarantor, E. C. Orton, reimbursed the bonding company and received an assignment of the company's claim against plaintiffs under the indemnity agreement. Mr. Orton later assigned such claim to defendant.

In the meantime, although subsequent to completion of the prime contract and the advancements made by the bonding company, plaintiffs initiated this action against defendant seeking damages for termination of their subcontract. Defendant counterclaimed for damages incurred as a result of plaintiffs' default.

This action initially went to trial on the issue of liability only. At the conclusion of such trial, the trial court found as a fact that plaintiffs were in default on their subcontract, determined that defendant had reasonably notified plaintiffs of such default, and dismissed the action. On appeal, after observing that the trial court's finding with respect to plaintiffs' default in performance was supported by substantial evidence, we concluded that the trial court erred in determining that defendant had complied with the notice requirements of the contract. We accordingly reversed the order of dismissal and remanded the cause for trial on the issue of damages. *Lano v. Osberg Constr. Co.,* 67 Wn.2d 659, 409 P.2d 466 (1965).

Following the remand, plaintiffs amended their claim for relief to include an allegation of damage predicated upon their potential liability to the bonding company. In response, defendant pleaded the assignment it held of the bonding company's claim against plaintiffs. Plaintiffs' motion to dismiss the defendant's claim under the assignment

was denied and a lengthy trial relating to the issue of damages followed.

At the conclusion of the trial, the trial court indicated that, in the interest of avoiding a multiplicity of suits, it intended to recognize defendant's counterclaim predicated upon the assignment of the bonding company's claim of indemnification. The trial court then tendered to plaintiffs a continuance to permit assembly and presentation of any additional evidence they might have in connection with defenses or setoffs to the assigned claim. Plaintiffs declined the proffered continuance and urged disposition of the case upon the evidence as it then stood.

Thereafter, the trial court in a considered memorandum opinion, the essence of which is carried into the findings of fact and conclusions of law, determined that it would have cost plaintiffs $65,269 to have completed performance of their subcontract. This amount, which is not challenged on appeal, is considerably in excess of the amount remaining due on the subcontract at the time defendant took over completion of the work. The trial court then found that defendant, in performing the balance of the work on the subcontract, received the sum of $82,912. This sum consisted of $42,912 remaining due on the subcontract at the time of its termination and $40,000 paid by the bonding company upon the performance bond. The trial court denominated the difference between the amount plaintiffs could have completed the work for and the amount received by defendant—$17,643—as an overpayment on the bond and awarded plaintiffs judgment in that amount, plus the sum of $3,039.24, representing the amount plaintiffs would have received for timber they could have removed from the jobsite, and $780 as rental upon equipment belonging to plaintiffs which defendant utilized in completing the work on the subcontract. The total recovery thus afforded plaintiffs was rounded out at $21,462. The trial court further determined and found that defendant was substantially damaged by reason of the delay in completing its prime contract, occasioned by plaintiffs' failure to timely

perform their subcontract, but concluded that defendant was without recourse for this damage under the terms of the subcontract. As we have indicated, these calculations and findings by the trial court are in no way challenged on this appeal.

The trial court then turned to a consideration of defendant's counterclaim as assignee of the bonding company's claim of indemnification. In its memorandum decision the trial court, after noting that plaintiffs had declined to present any evidence relating to defenses or offsets against the assigned claim, determined that as the evidence stood the indemnity agreement executed by plaintiffs in obtaining the performance bond rendered them liable to reimburse the bonding company for expenditures under the bond, that the assignments of this right of indemnification first to Mr. Orton, the guarantor, and then to defendant were valid and effective, and defendant, as the then assignee, was entitled to assert the claim. The trial court then opined that judgment on the counterclaim should be entered on behalf of defendant for the amount of $40,000, the sum advanced by the bonding company, less the amount of the overpayment of $17,643 coupled with plaintiffs' other damages. Again, by its memorandum decision, the trial court proffered plaintiffs additional time to present evidence bearing upon defenses or setoffs to the assigned claim and, for the second time, plaintiffs rejected the offer.

Findings of fact, conclusions of law, and judgment were then entered, the net effect of which was to award judgment to defendant upon its counterclaim in the amount of $18,538, representative of the difference between plaintiffs' judgment of $21,462 and the full amount of plaintiffs' liability on the assigned claim of the bonding company, *i.e.,* $40,000.

On appeal plaintiffs challenge the award to defendant, primarily upon the basis of their contention that our decision in the first appeal, *Lano v. Osberg Constr. Co., supra,* established that the termination of their subcontract was wrongful and, hence, the bonding company was not legally

liable upon the performance bond. Therefore, plaintiffs argue, the payments made on the bond were voluntary payments and not reimbursable by them under their indemnity agreement.

We cannot agree.

■ At the outset it is to be noted that (a) the terms of the indemnity agreement executed by plaintiffs to the bonding company are not in dispute; (b) the respective assignments of the bonding company's rights to indemnification are not challenged; (c) the trial court's finding, in the liability phase of the case, to the effect that plaintiffs were in default in the performance of the subcontract at the time defendant took over the completion of the work is supported by substantial evidence, and the delay occasioned by plaintiffs' inability was found to have caused defendant substantial losses; (d) payments made by the bonding company were accomplished long before plaintiffs instituted this case, and evidence in the record reveals that plaintiffs, at the time, advised the bonding company they were unable to continue with the subcontract; (e) plaintiffs were kept advised through correspondence and otherwise of the fact that negotiations were being carried on with respect to payments to be made by the bonding company; (f) under the trial court's findings, which are supported by substantial evidence, it would have been impossible for plaintiffs to complete their subcontract without incurring a substantial deficit; (g) by pleading and seeking to recover from the defendant amounts advanced by the bonding company plaintiffs tacitly, at least, admit some liability under their indemnity agreement; and (h) implicit in the trial court's disposition of the damage phase of the case is the determination that the bonding company was authorized and legally obligated to make payments upon its undertaking to the extent of the recovery allowed on the assigned claim.

Coupled to these circumstances is the fact that the indemnity agreement executed by plaintiffs conferred broad powers upon the bonding company. In this regard the agreement provided in pertinent part:

The undersigned shall indemnify, and keep indemnified and save and hold harmless the Company against all loss, costs, damages, expenses and attorneys' fees whatever, and any and all liability therefor, sustained or incurred by the Company by reason of having executed or procured the execution of any such bond; . . . The Company shall have the exclusive right for itself and for the undersigned to decide and determine when any claim, demand, suit or judgment upon any such Bond or Bonds shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and its determination shall be final, conclusive and binding upon the undersigned; and any loss, costs, charge, expense or liability thereby sustained or incurred as well as any and all disbursements on account of costs, expenses and attorneys' fees deemed necessary or advisable by the Company shall be borne and paid immediately by the undersigned. In the event of any payment, settlement, compromise or investigation, an itemized statement of the payment, loss, costs, damages, expenses or attorneys' fees, sworn to by any officer of the Company, or the voucher or vouchers or other evidence of such payment, settlement or compromise, shall be prima facie evidence of the fact and extent of the liability of the undersigned to the Company in any claim or suit hereunder and in any and all matters arising between the undersigned and the Company.

Against this background, we are convinced that the trial court properly permitted the defendant, as the undisputed and duly constituted assignee of the bonding company, to assert and litigate any properly assigned claim arising from the indemnity agreement. Furthermore, and specifically bearing in mind that our disposition of the appeal on the liability phase of this case turned upon a procedural question rather than upon the issue of plaintiffs' actual default on the subcontract, we are satisfied the trial court did not err in determining that the bonding company was legally obligated, at the time the payments in question were made, to make appropriate disbursals pursuant to the terms of its performance bond. In this regard, the bonding company was not required to submit to suit or await the running of the statute of limitations upon possible suits by plaintiffs

before undertaking negotiation and settlement of defendant's claims arising from plaintiffs' acknowledged default in performance under its subcontract. Particularly would this appear to be so where the bonding company was not timely advised by plaintiffs of any alternative remedy of or defense to the defalcation. The bonding company, under such circumstances, cannot be reasonably characterized as a volunteer, and it follows that plaintiffs become liable under the clear and unambiguous terms of their indemnity agreement to reimburse, to the bonding company or its authorized assignee, such payments as were found to be properly made absent any evidence of appropriate defenses or setoffs.

Finding no merit in this contention or the remaining contentions advanced by plaintiffs, we affirm the judgment of the trial court.

HUNTER, C. J., McGOVERN, J., and JOHNSEN, J. Pro Tem., concur.

NEILL, J., concurs in the result.

---

February 24, 1970. Petition for rehearing denied.