

2015 AUG 10 AM 10: 00

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| SAK & ASSOCIATES, INC., a Washington corporation, | ) ) ) | No. 72258-1-I |
| Appellant/Cross Respondent, | ) ) | |
| v. | ) ) | |
| FERGUSON CONSTRUCTION, INC., a Washington corporation, | ) ) ) | PUBLISHED OPINION |
| Respondent/Cross Appellant. | ) ) ) | FILED: August 10, 2015 |

VERELLEN, A.C.J. — Subcontractor SAK & Associates contends general contractor Ferguson Construction, Inc. wrongfully terminated their contract by invoking an illusory termination for convenience clause and failing to give proper notice of the termination. There are no Washington cases addressing such clauses in private construction contracts. A termination for convenience clause is enforceable when supported by adequate consideration. Here, partial performance provides adequate consideration. Ferguson also gave SAK adequate notice of termination.

Accordingly, we affirm.

## FACTS

In April 2012, SAK entered into a fixed sum contract with Ferguson to provide concrete materials and paving services for the construction of hangars at an airport. SAK performed work under the subcontract from April 18, 2012 to July 27, 2012.

On July 27, 2012, Ferguson terminated SAK from the project. The notice of termination referred to "phasing restrictions, site logistics, and basic convenience," citing section 7 of the subcontract.[1] Section 7 permits Ferguson to terminate the subcontract "for its own convenience and require Subcontractor to immediately stop work."[2] Upon termination, Ferguson paid SAK $181,044.77 for the work actually performed.

On May 10, 2013, SAK sued Ferguson for damages of $226,650.68, alleging that Ferguson breached the subcontract by unilaterally terminating "without cause."[3] Ferguson moved for summary judgment based on SAK's failure to comply with the claim procedures set forth in the subcontract. The trial court denied that motion, as well as Ferguson's subsequent motion for reconsideration.

SAK filed a motion for partial summary judgment, contending the termination for convenience provision was invalid as a matter of law. The trial court denied the motion. Ferguson then filed its second motion for summary judgment, contending it properly exercised the termination for convenience provision in the subcontract, which was enforceable as a matter of law. The trial court granted the motion and dismissed SAK's claims with prejudice. The trial court also awarded Ferguson $44,114.25 in attorney fees.

SAK appeals the court's order granting summary judgment and the attorney fee award. Ferguson cross appeals the amount of the attorney fee award.

---

[1] Clerk's Papers (CP) at 104.

[2] CP at 94.

[3] CP at 2.

## DISCUSSION

SAK contends that the trial court erred because the termination for convenience clause is an illusory promise and therefore is unenforceable. SAK also contends that there are genuine issues of material fact whether the notice of termination was reasonable, asserting that Ferguson's notice was "false and pretextual."[4] We find no merit in either contention.

Summary judgment is proper when there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law.[5] We construe the evidence in the light most favorable to the nonmoving party and review the ruling on the record before the trial court at the time of the summary judgment motion.[6]

### Termination for Convenience Clause

The concept of "termination for convenience" in contracts dates back to the American Civil War. To avoid costly military procurements when changes in war-time technology or cessation of conflict rendered them unnecessary, the federal government included termination for convenience clauses in its contracts.[7] Under certain circumstances, the government terminated wartime contracts that were no longer necessary and settled with the contractor for partial performance.[8] Today, termination

---

[4] Appellant's Br. at 17.

[5] CR 56(c).

[6] Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998); RAP 9.12; Wash. Fed'n of State Emps., Council 28 v. Office of Fin. Mgmt., 121 Wn.2d 152, 163, 849 P.2d 1201 (1993).

[7] Krygowksi Constr. Co. v. United States, 94 F.3d 1537, 1540 (1996).

[8] Id.

for convenience clauses are required by regulations for most government procurement contracts.[9]

The use of termination for convenience clauses has migrated to the private setting, notably in construction and high technology contracts.[10] Most standard form construction contracts include such clauses.[11] There is very limited authority addressing termination for convenience clauses in private contracts.[12]

Here, the subcontract provides for termination for convenience:

> In addition to the rights listed above, Contractor may, after providing Subcontractor with written notice, terminate (without prejudice to any right or remedy of Contractor) the Subcontract, or any part of it, for its own convenience and require Subcontractor to immediately stop work. *In such event, the Contractor shall pay the Subcontractor for the work actually performed in an amount proportionate to the total Subcontract price.* Contractor shall not be liable to the Subcontractor for any other

---

[9] Id. at 1541.

[10] Ryan P. Adair, *Limitations Imposed by the Covenant of Good Faith and Fair Dealing upon Termination for Convenience Rights in Private Construction Contracts,* 7 J. AM. C. CONSTRUCTION LAW. 127, 127-28 (2013).

[11] Id. at 161 ("several standard form construction contracts . . . provide insight into the customary treatment of [termination for convenience] clauses," referencing the American Institute of Architects, the Associated General Contractors of America, the American Subcontractors Association, the Engineers Joint Contract Documents Committee, and the Design-Build Institute of America).

[12] Id. at 128. The extensive jurisprudence governing termination for convenience provisions in government contracts is grounded in the particular role played by government agencies. But "the case-law supporting such a broad right in federal contracts obviously is of limited value when interpreting a contract between private parties. . . . [T]he federal government stands in a position entirely uncomparable to that of a private person." Questar Builders, Inc., v. CB Flooring, LLC, 410 Md. 241, 271, 978 A.2d 651 (2009); see also Vila & Son Landscaping Corp. v. Posen Constr., Inc., 99 So. 3d 563, 567 (2012) ("[W]e find limited value in these federal procurement cases and look instead to common law contract principles as articulated by Florida's courts."). We do not find the federal case law on government contracts helpful in analyzing the private contract issues presented in this appeal.

costs, including anticipated profits on work not performed or unabsorbed overhead.[13]

SAK argues that this clause is an invalid illusory promise and that Ferguson breached the subcontract by invoking the clause.[14] In Washington, whether a promise is illusory generally turns on whether there is adequate consideration.

An enforceable contract requires consideration.[15] "If the provisions of an agreement leave the promisor's performance entirely within his discretion and control, the 'promise' is illusory. Where there is an absolute right not to perform at all, there is an absence of consideration."[16] Thus, if a promise is illusory, there is no consideration and no enforceable obligation.[17] Washington courts "will not give effect to interpretations that would render contract obligations illusory."[18]

In construction contracts, consideration usually consists of reciprocal promises of the contractor and the owner, or the subcontractor and the general contractor, to

---

[13] CP at 94 (emphasis added).

[14] Ferguson contends that SAK's argument that the contract is illusory actually defeats its breach of contract claim because if the contract is unenforceable, there can be no breach. But SAK does not appear to argue that the clause renders the entire contract invalid, just that the termination for convenience clause is illusory and therefore unenforceable.

[15] King v. Riveland, 125 Wn.2d 500, 505, 886 P.2d 160 (1994).

[16] Felice v. Clausen, 22 Wn. App. 608, 611, 590 P.2d 1283 (1979).

[17] Omni Group, Inc. v. Seattle-First Nat'l Bank, 32 Wn. App. 22, 24-25, 645 P.2d 727 (1982).

[18] Taylor v. Shigaki, 84 Wn. App. 723, 730, 930 P.2d 340 (1997); see also Kennewick Irrigation Distr. v. United States, 880 F.2d 1018, 1032 (9th Cir. 1989) ("'Preference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory.'" (quoting Shakey's Inc. v. Covalt, 704 F.2d 426, 434 (9th Cir. 1983))).

5

perform work and to pay for that work.[19] The form construction contract provisions governing compensation upon a termination for convenience are particularly varied. For example, American Institute of Architects (AIA) form A201 (2007) generously includes compensation for overhead and profit on work not completed.[20] Because it is so favorable to the terminated contractor, this AIA compensation provision "is frequently revised or negotiated out of the final contract documents."[21, 22] Other form contracts, such as the Design-Build Institute of America document 530 (2d ed. 2010), contemplate one fee to be paid for termination before commencement of work and a different fee after commencement of work "endors[ing] the principle that partial performance may provide consideration in support of broader termination for convenience rights."[23] It is also clear that some termination for convenience clauses provide only for proportionate payment for the work performed through the date of termination.[24]

SAK specifically contends that because the termination for convenience clause allows Ferguson to terminate the contract at its discretion, it lacks consideration and is

---

[19] Adair, *supra*, at 130.

[20] Id. at 161.

[21] Stephen M. Seeger & Ben Patrick, *Terminations for Convenience—"You Want Me to Pay You What?"*, Address at the American Bar Association Forum on the Construction Industry 2013 Midwinter Meeting 24 (Jan. 31 & Feb. 1, 2013), http://www.imageserve.com/naples2013/papers/WorkshopB.pdf.

[22] Notably here, the owner and Ferguson modified their AIA A-201 termination for convenience clause to delete any overhead or profit for work not completed. See CP at 83.

[23] Adair, *supra*, at 163.

[24] See id. at 141-42 ("Monetary consideration may be furnished by either payment of damages or partial performance.").

therefore illusory and unenforceable. Because partial performance provides adequate consideration, we disagree.

Agreements that permit one party to cancel or terminate the undertaking are not illusory if there is some restriction upon the power to terminate.[25] Generally, the right to cancel or terminate is not illusory where it can be exercised only upon the occurrence of specified conditions, such as providing notice.[26] *Williston on Contracts* observes that "the tendency is to interpret even a slight restriction on the exercise of the right of cancellation as constituting a legal detriment sufficient to satisfy the requirement of consideration[,] for example, . . . upon written notice."[27] While some courts have upheld termination for convenience clauses based upon written notice requirements,[28] others cast doubt upon the adequacy of consideration resulting from a notice provision.[29] Here, the contract provides for termination for convenience immediately upon written notice of termination. We need not determine whether the written notice requirement provides adequate consideration for the termination for convenience clause.

It is well recognized that partial performance provides adequate consideration for enforcement of what otherwise might be an illusory provision granting unilateral control

---

[25] Omni Group, 32 Wn. App. at 28.

[26] Id.

[27] 3 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 7.13, at 316-19 (4th ed. 2008).

[28] See Vila & Son, 99 So. 3d at 568 (provision requiring written notice in a termination for convenience clause provided sufficient consideration to prevent the promise from being illusory under Florida law) (cited here by trial court).

[29] See Questar Builders, 410 Md. at 279 n.24 ("We decline to speculate whether a contract reserving the right to terminate for any reason, upon two days' notice, would be enforceable.").

to one party.[30] We are not faced with an attempt to invoke a termination for convenience clause before the commencement of any work or only after a nominal amount of work. Here, SAK completed 24 percent of the project, and Ferguson paid a proportionate amount of the fixed contract price. This level of partial performance provides adequate consideration. Accordingly, SAK fails to establish the termination for convenience provision is illusory for lack of consideration.

Although not argued by SAK, some courts read an implied covenant of good faith and fair dealing into a contract that grants one party the discretionary authority to determine a contract term.[31] And some jurisdictions read a duty of good faith and fair dealing as a limit upon the exercise of a termination for convenience provision.[32] "But covenants of good faith and fair dealing do not trump express terms or unambiguous rights in a contract."[33] Rather, "as a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a

---

[30] 13 SARAH HOWARD JENKINS, CORBIN ON CONTRACTS § 68.9, at 247-48 (rev. ed. 2003) ("The reservation of such a power neither invalidates the contract nor renders a promise given as consideration illusory. As long as the party with the reserved power to terminate is irrevocably bound for any period of time or has materially changed any of its legal relations or otherwise rendered some performance capable of operating as a consideration, consideration has been given and the other's promise is enforceable."); Adair, *supra*, at 142 ("Partial performance accomplishes the same as payment of damages.").

[31] Myers v. State, 152 Wn. App. 823, 828, 218 P.3d 241 (2009).

[32] Although not cited by the parties, in Questar Builders, 410 Md. at 279, the Maryland Court of Appeals held that a termination for convenience provision in a private subcontract is limited by the duty of good faith and fair dealing. But the clause was exercised when no work had been performed by the subcontractor, and it appears that Maryland law on illusory promises is not consistent with Washington law. See also Vila & Son, 99 So. 3d at 568-69 (rejecting theory that duty of good faith restricts exercise of termination for convenience clause).

[33] Myers, 152 Wn. App. at 828.

contract according to its terms."[34] In Washington, the only case touching on the subject held that the implied duty of good faith and fair dealing does not restrict the use of an express and unambiguous termination for convenience clause.

In Myers v. State, the court held that the Department of Social & Health Services (DSHS) properly terminated a contract with a caregiver based on a termination for convenience provision, recognizing that the covenants of good faith and fair dealing do not trump express contract terms.[35] The contract allowed DSHS to terminate for default upon a finding of neglect. It further provided that "[i]f it is later determined that the [c]ontractor was not in default, the termination shall be considered a termination for convenience."[36] DSHS terminated the caregiver's contract after an investigation resulted in a finding that she neglected a vulnerable adult. The neglect finding was ultimately reversed and the caregiver sued DSHS for breach of contract, but the trial court dismissed the claim.[37]

This court affirmed, upholding the termination for convenience provision and concluding that "the plain language of that provision authorizes termination even when a finding of neglect is later determined to be unfounded."[38] The court recognized that "[t]he contract grants DSHS broad authority to terminate the contract, regardless of the outcome of the administrative process," explaining:

---

[34] Badget v. Security State Bank, 116 Wn.2d 563, 570, 807 P.2d 356 (1991).

[35] 152 Wn. App. 823, 828, 218 P.3d 241 (2009).

[36] Id.

[37] Id. at 827.

[38] Id. at 829.

Ms. Myers makes a persuasive case that she, essentially, did nothing wrong here. Indeed, the administrative process vindicated her. She, however, ignores the termination for convenience provision of her contract and offers no statute or administrative rule with which it might conflict. She raises questions of fact. But they are not material questions of fact. DSHS had authority under this contract to terminate the contract on a finding of neglect by Adult Protective Services and, failing that, it could do so for convenience. The trial court properly dismissed her suit on summary judgment.[39]

Similarly here, Ferguson properly invoked the termination for convenience clause to which both parties agreed. SAK argues that Myers should be distinguished because it involved services for an indefinite period of time and because Myers did not expressly contest the validity of the termination for convenience clause. But Myers expressly holds that an unambiguous termination for convenience clause is not limited by the implied duty of good faith and fair dealing.

Enforcing the termination for convenience provision here is also consistent with our focus upon "the objective manifestations" of intent of the parties.[40] Ferguson and SAK objectively manifested their intent that the contract may be terminated for convenience by Ferguson upon written notice, requiring only a proportionate payment of the contract price. A proportionate payment based upon the amount of work completed in a fixed price contract necessarily includes a proportionate share of any overhead and profit that SAK built into the negotiated fixed price. The parties could have negotiated other limitations or terms of payment upon a termination for convenience, but they did not do so. There is no assertion that the contract is procedurally or substantively

---

[39] Id. at 829-30 (citations omitted).

[40] State v. R.J. Reynolds Tobacco Co., 151 Wn. App. 775, 783, 211 P.3d 448 (2009).

unconscionable. The parties partially performed their contract. The implied duty of good faith and fair dealing does not allow one party to reshape or evade the bargain that was mutually agreed. On these facts and this briefing, the termination for convenience clause is not illusory or otherwise unenforceable.

*Notice of Termination*

SAK also contends that Ferguson did not give SAK proper notice of the termination. We disagree.

"Whether particular notice was reasonable is ordinarily a question of fact for the jury. But when reasonable minds could reach only one conclusion, the court can determine reasonableness as a matter of law."[41] "Reasonable notice" is "'notice or information of a fact as may fairly and properly be expected or required in the particular circumstances.'"[42]

Section 7 of the subcontract provides for notice of termination for convenience on written notice:

> In addition to the rights listed above, Contractor may, after providing Subcontractor with written notice, terminate (without prejudice to any right or remedy of Contractor) the Subcontract, or any part of it, for its own convenience and require Contractor to immediately stop work.[43]

Ferguson sent the following notice of termination:

> Ferguson Construction has determined that SAK's services for this project are no longer required. Due to overall phasing restrictions, site logistics, and basic convenience, it has become apparent that it is in the

---

[41] Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co., 135 Wn. App. 760, 767, 145 P.3d 1253 (2006) (citations omitted).

[42] Lano v. Osberg Const. Co., 67 Wn.2d 659, 663, 409 P.2d 466 (1966) (quoting BLACK'S LAW DICTIONARY 1211 (4th ed. 1951)).

[43] CP at 94.

best interest of the project to complete the site concrete paving with Ferguson's own forces. This decision is *not* based on SAK's work performed to date.

Pursuant to Section 7 of the Subcontract General Conditions, the subcontract is terminated, effective immediately. SAK will be compensated for work performed based on the agreed upon unit price as stated in the Subcontract Agreement.[44]

The termination for convenience clause requires written notice to the subcontractor, but does not specify the content of the notice. The undisputed facts are that Ferguson gave such notice. SAK complains that Ferguson's references to phasing, site logistics, and convenience were merely false and pretextual excuses for Ferguson's goal of increasing its profits from the project. But as noted above, the termination for convenience clause is valid so long as a written notice is given and payment for work performed is made proportionate to the total fixed price of the subcontract. Nothing in the termination for convenience clause required that the notice state any reason beyond "convenience."

SAK's reliance on Lano v. Osberg Construction is misplaced.[45] There, the subcontractor was given notice that it had one business day and a weekend to meet a list of demands or its contract would be terminated. The court concluded that under the circumstances, such notice was "patently not enough time to permit a reasonable attempt to meet the demands."[46] But here, the termination was not contingent upon meeting a list of demands; it was simply a termination for convenience, which was contemplated by the parties in the clear language of the contract.

---

[44] CP at 104.

[45] 67 Wn.2d 659, 409 P.2d 466 (1966).

[46] Id. at 664.

12

SAK also contends that Ferguson's notice was not reasonable because it did not allow SAK to take action to protect its rights under the contract. SAK argues that the content of the notice is critical to submitting a timely notice of a claim or dispute.[47] But SAK also acknowledges that there were no defects in performance that gave rise to the termination. Rather, the termination was simply based on convenience, against which SAK had no claim. Thus, this argument is without basis. Indeed, the trial court rejected Ferguson's argument that SAK was required to comply with the contract's claim requirements.[48] At most, SAK had a claim for the proportionate amount it was owed for the work performed to date, but the notice of termination was sufficient to allow SAK to make that claim.

## Attorney Fees

SAK argues that the attorney fees award should be vacated because the summary judgment was improper, but we affirm the summary judgment. Ferguson cross appeals the attorney fees award, contending that the trial court abused its discretion by reducing Ferguson's requested fees when it was the substantially prevailing party. We disagree.

---

[47] SAK refers to section 20 of the subcontract, which requires that the subcontractor give notice of a claim or dispute within 14 days of the occurrence of a problem, dispute, claim or delay event, or the claim will not be reimbursed.

[48] Ferguson asserts that the trial court's ruling on this issue (raised in Ferguson's first summary judgment motion) was error and offers this as another basis upon which to affirm the trial court. But Ferguson neither cross appealed nor assigned error to this ruling, which rejected Ferguson's argument that SAK's failure to comply with the notice and claim requirements barred SAK's lawsuit. Thus, this argument is not within the scope of our review. But see Realm v. City of Olympia, 168 Wn. App. 1, 8, 277 P.3d 679 (2012) (holding that contractor waived right to sue city by failing to comply with notice provisions in the contract that were precondition to litigation against the city).

We review the reasonableness of an award for attorney fees for an abuse of discretion.[49] The party seeking fees bears the burden of proving the reasonableness of the fees.[50] Using the lodestar method, the trial court "must first determine that counsel expended a reasonable number of hours in securing a successful recovery for the client."[51] This necessarily "requires the court to exclude from the requested hours any wasteful or duplicative hours and any hours pertaining to unsuccessful theories or claims."[52]

Here, the contract's fee provision states, "If either party becomes involved in litigation or arbitration arising out of this Subcontract or the performance thereof, the court or arbitration panel in such litigation or arbitration or in a separate suit, shall award attorney fees to the substantially prevailing party."[53] Ferguson requested $58,819.72, the total amount of attorney fees billed. The trial court found that "Ferguson is the substantially prevailing party pursuant to the subcontract sec[tion] 40 and that most of Ferguson's fees are reasonable under the lodestar methodology."[54] The court ordered SAK to pay Ferguson attorney fees in the amount of $44,114.25.

SAK argued that the fee should be reduced to account for Ferguson's unsuccessful motion for summary judgment and motion to reconsider, but it is not clear

---

[49] Cook v. Brateng, 180 Wn. App. 368, 375, 321 P.3d 1255 (2014) (quoting Gander v. Yager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012)).

[50] Mahler v. Szucs, 135 Wn.2d 398, 434, 957 P.2d 632 (1998).

[51] Id.

[52] Id.

[53] CP at 102.

[54] CP at 442 (citing Berryman v. Metcalf, 177 Wn. App. 644, 312 P.3d 745 (2014)).

from the record that this is the basis upon which the trial court reduced the requested fees. The trial court's order simply states that SAK is ordered to pay attorney fees "in the amount of $44,114.25, given the proportional factor(s) as noted in <u>Berryman v. Metcalf</u>."[55]

The trial court's offered reason of "proportionality" under <u>Berryman</u>— the relationship between the amount at stake and the amount of fees—is not compelling here. But Ferguson fails to show that the trial court's fee award was an abuse of discretion. The amount the court ordered here was approximately $14,000 less than the amount requested, a discount of one-fourth of the total fees. Given that Ferguson did incur fees on unsuccessful motions for summary judgment and reconsideration, Ferguson fails to show that this discount was unreasonable and amounted to an abuse of discretion.

Ferguson contends that because there was only one claim, the breach of contract claim upon which it ultimately prevailed, it was entitled to all fees incurred in defending against that claim. But, as noted above, Washington case law recognizes that a reasonableness determination requires the court to exclude "any hours pertaining to unsuccessful *theories* or claims."[56] The summary judgment motions were based on two different theories, the first of which was unsuccessful. Accordingly, the court in its discretion could properly exclude the fees incurred on that unsuccessful theory. Ferguson fails to establish that the fee award was an abuse of discretion.

---

[55] CP at 442.

[56] <u>Mahler</u>, 135 Wn.2d at 434 (emphasis added).

Ferguson also requests fees on appeal under RAP 18.1, as provided by the contract. When a contract provides for an attorney fee award in the trial court, the party prevailing before this court may seek reasonable attorney fees incurred on appeal.[57] Because Ferguson is the prevailing party, we award its reasonable fees on appeal upon compliance with RAP 18.1.

We affirm.

WE CONCUR:

---

[57] <u>First-Citizens Bank & Trust Co. v. Reikow</u>, 177 Wn. App. 787, 800, 313 P.3d 1208 (2013); RAP 18.1.