IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ELLEN TAFT, a married woman, and ARTHUR CHAMPERNOWNE, a married man, and their marital community, | ) ) ) ) ) | No. 73917-4-I<br><br>DIVISION ONE |
| Appellants, | ) ) ) | |
| v. | ) ) | |
| CENTRAL CO-OP, a Washington nonprofit corporation, DAN ARNETT, a married man, JANE DOE ARNETT, a married woman, and their marital community, | ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) | FILED: December 27, 2016 |

SCHINDLER, J. — Under the bylaws of the Central Co-op, after written notice and an opportunity for the member to respond, the board of trustees can terminate a membership for repeated violations of the bylaws or policies. Ellen Taft filed a lawsuit against Central Co-op alleging the board of trustees violated the bylaws when it terminated her co-op membership. The court dismissed the lawsuit on summary judgment. Because there are genuine material issues of fact as to whether the co-op provided notice that complied with the bylaws, we reverse and remand.

FACTS

Central Co-op is a nonprofit corporation that operates a grocery store in the Capitol Hill neighborhood of Seattle. Ellen Taft has been a member of Central Co-op

since "the early 90's."

On June 27, 2013, Taft told Central Co-op employee Alexander DuBois he should "question whether the many dogs in the store were indeed service dogs." DuBois said it was "against the law to question individuals with dogs" and he "was not allowed to confront shoppers" about whether a dog is a service animal. Co-op store supervisor Jessica Daw also told Taft that Central Co-op employees "are not allowed to ask shoppers whether their dog is a service animal."

Taft contacted Seattle & King County Public Health to report the presence of a "non-service animal" at the Central Co-op store. On June 28, a Public Health compliance officer conducted an inspection of the store and found "no animals in the store at this time."

On July 3, Central Co-op Manager Douglas Peterson called Taft at her home about the June 27 interaction with co-op employees DuBois and Daw. Peterson told Taft "never to approach a staff member or address issues pertaining to pets and service animals again."

On November 14, a Central Co-op customer submitted a written comment card. The customer described a woman angrily confronting him about his service animal. The card states, in pertinent part:

> Today . . . I entered the Co Op and was met by a woman insisting and pointing at me and my dog saying animals/pets aren't allowed — she repeated this several times, each one with more anger, spite and venom. Needless to say I was shocked and stated truthfully and matter of fact "my dog is a service animal."

On December 6, Peterson called Taft at her home about "an incident on November 14, 2013." Taft denied any "incident had taken place on November 14."

2

Peterson told Taft she would receive a letter explaining why she was "was no longer welcome to shop at the Co-Op."

On December 11, Taft's attorney sent a letter to the Central Co-op Board of Trustees (Board). The letter states Taft "has never received a single notice that she has somehow run afoul of Central Co-Op's rules and regulations and that her membership was in jeopardy." The attorney states the co-op bylaws required written notice of the proposed termination of membership or shopping privileges and the opportunity to respond. The letter states that because Taft "did not receive any kind of written notice . . . , the termination is in violation of the Co-Op Bylaws."

On February 21, 2014, Taft's attorney sent the Board a second letter. The attorney states Taft did not receive a response to the December 11 letter or a copy of the letter Peterson said he was going to send on December 6. Taft's attorney reiterates that under the bylaws, Taft is entitled to written notice and an opportunity to respond.

Central Co-op General Manager Dan Arnett took the position that because Taft was not a Central Co-op member, the co-op did not have to follow the requirements of the bylaws. On March 5, Taft sent Arnett a letter stating she was a Central Co-op member and attached a copy of her membership card. After reviewing its records, Central Co-op confirmed Taft was a member.

On April 28, the Board sent a letter to Taft terminating her membership. The letter states the Board decided to terminate Taft's membership "due to your actions at the Co-op including the verbal abuse of shoppers and workers as well as your continued refusal to refrain from such activity even after repeated warnings." The letter states the cause for termination includes "intentional or repeated violation" of the

3

Central Co-op bylaws or policies. The letter states, "[Y]ou have repeatedly violated two important policies and are creating an unsafe shopping experience for customers as well as mistreating staff."

> According to the Co-op's bylaws the Board of Trustees has the right to involuntarily terminate a membership for cause. Cause may include but is not limited to intentional or repeated violation of any provision of the Co-op's bylaws or policies. Based on your current actions the Board believes that you have repeatedly violated two important policies and are creating an unsafe shopping experience for customers as well as mistreating staff. Board Policy B5 sates "the General Manager shall not allow an unsafe shopping experience for our customers." And Board Policy B6 states "the General Manager shall not cause or allow treatment of staff in any way that is unfair, unsafe, unclear or undignified."

The Board told Taft she could "provide written explanation of your actions" by May 18.

> You have until **Sunday May 18th** to provide written explanation of your actions to the board. The board will take your statement into consideration before voting for an official termination of your membership.[1]

On May 14, Taft's attorney sent a letter to the Board President. The letter states the Board "received misinformation about Ms. Taft" and she does not "understand where you got the notion she 'repeatedly' did anything that could be construed as a violation of policy."

> It appears that you, and perhaps the other board members, have received misinformation about Ms. Taft. Allow me to correct the record. You say that Ms. Taft has "repeatedly violated two important policies." We do not understand where you got the notion she "repeatedly" did anything that could be construed as a violation of policy.

---

[1] Emphasis in original.

The letter describes Taft's concern about animals in the store and summarizes the interactions between Taft and Central Co-op employees during summer 2013.

> Like most of us, Ellen Taft is aware of the obvious, potential hazards to sanitation and safety when dogs and other pets are allowed inside a store where food is sold and consumed. Last summer she called attention to a pet dog inside the store and asked a staff member to inquire of the owner if the dog was a bona fide service animal. The staff person refused, but the customer immediately volunteered that the dog was merely a pet and departed the store. Another time, a staff person refused Ms. Taft's request to inquire if a dog was a service animal, saying that the ADA[2] prohibited the question. Ms. Taft knew otherwise.

The letter also describes the telephone calls from Peterson to Taft in July and December 2013 and Taft's denial that an incident occurred on November 14.

> After these incidents, in July 2013, a Co-op staff member told Mrs. Taft over the telephone not to request staff enforcement of regulations pertaining to service animals. . . .

> On the morning of December 7 [sic], 2013, . . . Petersen [sic] . . . called Mrs. Taft to proclaim, in an angry tone of voice, that her "shopping privileges" were being terminated. He stated that an incident had occurred on November 14, but Mrs. Taft replied that no such incident had occurred.

The attorney requested the Board provide additional information about the alleged "repeated" violations. The letter states, in pertinent part, "I have several questions for you, starting with this: Where are the 'repeated' violations by Mrs. Taft of any Co-op regulation? Kindly provide documentation of this allegation." The Board did not respond.

On June 25, the Board President sent Taft a letter informing her that the Board voted on June 9 to terminate her membership. The letter identifies the June 27 interactions with co-op staff and the November 14 customer complaint as "incidents

---

[2] Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213.

during 2013 when Mrs. Taft acted inappropriately in the store harassing either staff or

shoppers."

> Central Co-Op's staff provided documentation to the board of several specific incidents during 2013 when Mrs. Taft acted inappropriately in the store harassing either staff or shoppers. Including an incident on June 27, 2013 when two staff reported being verbally abused by Mrs. Taft. On July 3, 2013 one of the Co-op's staff managers contacted Ms. Taft by telephone and informed her that she was not to communicate directly with any customer in the Co-op about their service animal and that any communication with staff must be respectful. Ms. Taft was further informed that she would be banned from the store if she could not follow these rules.

> . . . .

> On November 14, 2013 a written complaint was received from a customer stating Ms. Taft had verbally attacked him while shopping. This qualified as a violation of the terms for Ms. Taft to continue shopping at the Co-op.

The letter includes descriptions of incidents from Central Co-op employees and

quotes the November 14 customer comment card to provide "more detail about how her

actions created an unsafe and undignified work and retail environment."[3] The Board

states, "Reasons and details for the consideration of Ms. Taft's membership termination

have been given verbally and in writing."

---

[3] The letter about the interaction quotes from a staff member on June 27, 2013:

"I did have an interaction which involved her [Ms. Taft] making a large scene and yelling at me in the store because of a dog. I can give you specifics if you like, but put simply, she is rude and harassing and refuses to calm down and speak with you once she gets started." - Staff member. June 28 2013.

(Alteration in original.) According to another staff member, " '[i]n the mid-afternoon of Thursday the 14th' ":

"I was helping a customer at the info desk when a woman [Mrs. Taft] loudly interrupted verbally, and by physically inserting herself between me and the customer, 'you need to call your manager right now and ask that man if that's a service dog'. Her arm was outstretched pointing at a regular customer and his small service dog, who was less than two arm lengths away. I said, 'Ma'am I'll be right with you' and attempted to finish my sentence to the customer I was helping, when she interjected again, louder and still pointing at the other customer. 'This [is] very serious, you need to call you [sic] manager right now and ask that man if that's a service dog.' At this point the customer with the service animal responded to her 'This is my service animal.' " - Staff member, November 16, 2013.

(Alteration in original.)

On August 29, Taft's attorney sent the Board a letter asking the Board to reconsider its decision to terminate Taft's membership. The letter states the reasons for terminating Taft's membership "have been a moving target" and the Board's June 25 letter "accused her, for the first time, of committing two bad acts in June and November of 2013." The letter states Taft "vehemently denies that these incidents occurred."

On November 17, Taft and her spouse Arthur Champernowne (collectively, Taft) filed a lawsuit against Central Co-op. Taft alleged the Board violated the bylaws by terminating her membership without providing notice of the reasons for the termination and an opportunity to respond.

Central Co-op filed a motion for summary judgment dismissal of the lawsuit. Central Co-op argued Taft's membership "was terminated in accordance with Central Co-Op's Bylaws." Central Co-op asserted the April 28, 2014 letter provided Taft with notice of the reasons for the proposed termination and an opportunity to respond. In support, Central Co-op submitted a number of documents and the declaration of Douglas Peterson.

On June 27, 2013, staff members DuBois and Daw told Peterson that "they had experienced a heated confrontation with Ms. Taft." Peterson called Taft on July 3 and "informed her that yelling at Co-Op staff and shoppers was not appropriate, and if this behavior occurred again she would not be allowed to shop at the Co-Op." Peterson learned about the interaction between Taft and a customer on November 14 "through a customer feedback form and communication from [a] Co-Op staff member." Peterson states that after speaking with the shopper and staff member "and reviewing information

related to the incident, I believed that she had ignored the warning provided to her on July 3, 2013."

On December 6, Peterson called Taft and told her "she was no longer welcome to shop at the Co-Op." Peterson states that he "sent a letter to Ms. Taft" on December 6 "informing her that due to her repeated inappropriate communications with Co-Op staff and customers most recently on November 14, 2013 she was no longer welcome to shop at the Co-Op." Peterson attached a copy of the undated letter addressed to Taft. The letter describes the interaction between Taft and the Central Co-op employees on June 27 and her "hostile confrontation with a shopper and staff" on November 14. The letter states, in pertinent part:

> On June 27th, 2013, you engaged with a customer and several employees in a manner that was inappropriate. I spoke with you about this over the phone on July 3rd and made clear several conditions that needed to be met for you to be welcome here at Central Co-op:
>
> - All communication between you and any staff member must be respectful and appropriate.
>
> - You are not allowed to communicate with any customer in Central Co-op about their service animal.
>
> - Failure to meet either of the above conditions would result in your not being allowed to shop at Central Co-op.
>
> On November 14th, you failed to adhere to the above conditions. . . . As such, you are no longer welcome at Central Co-op effective Friday, December 6, 2013. You will be asked to leave immediately if you return to the property.

In response, Taft argued the April 28 letter did not comply with the notice requirements of the bylaws. Taft asserted that unlike the June 25 letter terminating her membership, the April 28 notice did not provide the reasons for her termination.

8

In the alternative, Taft argued there were material issues of fact regarding whether Central Co-op complied with the bylaws by providing notice of repeated violations and the opportunity to respond.

In the declaration, Taft states she "never received any notice of the alleged incidents on which the Co-Op based its decision to terminate my membership."

> I never received any notice of the alleged incidents on which the Co-Op based its decision to terminate my membership. The June 25, 2014 letter from the Board, announcing that they had voted to terminate my membership on June 9, 2014, based on my violation of executive policies, of which I had never seen in my life, included references to incidents of alleged misconduct. I was never given notice of such incidents prior to my termination.

Taft admits that on June 27, 2013, she "informed a staff member that they should question whether the many dogs in the store were indeed service animals."[4] But Taft states she "did not confront and speak to either staff or customers in an abusive, aggressive, confrontational manner; and I never spoke to a customer at all."

Taft admits that during the July 3 phone call, Peterson told her she was not allowed to "approach a staff member or address issues pertaining to pets and service animals again." According to Taft, Peterson "did not warn me that my shopping privileges would be revoked." Taft admits that during the December 6, 2013 telephone call, Peterson "indicated that there had been an incident on November 14, 2013." But Taft denies the November 14 incident occurred and states she never received the undated letter Peterson claimed he sent to her on December 6.

---

[4] Emphasis in original.

The court granted Central Co-op's motion for summary judgment and dismissed the lawsuit. Taft filed a motion for reconsideration. Taft argued there were disputed issues of material fact. The court denied the motion.

ANALYSIS

Taft contends there are disputed issues of material fact as to whether Central Co-op complied with the bylaws by providing notice of repeated violations of the bylaws or policies and an opportunity to respond before terminating her membership.

As a preliminarily matter, Central Co-op cites Pleasant v. Regence BlueShield, 181 Wn. App. 252, 261, 325 P.3d 237 (2014), to argue Taft cannot assert there are genuine issues of material fact regarding notice because she filed a cross motion for summary judgment. But unlike in Pleasant, the record establishes Taft argued in the alternative that material issues of fact precluded summary judgment.[5]

We review an order of summary judgment dismissal de novo, engaging in the same inquiry as the trial court. Citizens All. for Prop. Rights Legal Fund v. San Juan County, 184 Wn.2d 428, 435, 359 P.3d 753 (2015). We view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014). A material fact precluding summary judgment is a fact

---

[5] In her reply brief, Taft concedes filing a cross motion for summary judgment precludes arguing there are material issues of fact regarding notice. We reject the concession as not well taken. See In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 875, 50 P.3d 618 (2002) ("[A] court is not bound by an erroneous concession related to a matter of law.").

that affects the outcome of the litigation. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164-65, 273 P.3d 965 (2012).[6]

The action of a corporation is conclusive if it is within the power conferred on the corporation and in accordance with the bylaws. 12A WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5704, at 797 (2009). Bylaws constitute a contract between the co-op and its members. See Langan v. Valicopters, Inc., 88 Wn.2d 855, 859, 567 P.2d 218 (1977); Rodruck v. Sand Point Maint. Comm'n, 48 Wn.2d 565, 578, 295 P.2d 714 (1956). Therefore, we apply the general principals of contract law when interpreting an organization's bylaws. Roats v. Blakely Island Maint. Comm'n, Inc., 169 Wn. App. 263, 273-74, 279 P.3d 943 (2012); Save Columbia Credit Union Comm. v. Columbia Cmty. Credit Union, 134 Wn. App. 175, 181, 139 P.3d 386 (2006). Where a contract requires notice, "[w]hether notice is reasonable depends on the circumstances of each case and is ordinarily a question of fact." Associated Petroleum Prods., Inc. v. Nw. Cascade, Inc., 149 Wn. App. 429, 434, 203 P.3d 1077 (2009); Lano v. Osberg Constr. Co., 67 Wn.2d 659, 663, 409 P.2d 466 (1965); SAK & Assocs., Inc. v. Ferguson Constr., Inc., 189 Wn. App. 405, 417, 357 P.3d 671 (2015); Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co., 135 Wn. App. 760, 766, 145 P.3d 1253 (2006).

Central Co-op's bylaws require notice and an opportunity to respond before involuntary termination of a membership. Central Co-op bylaw 2.9 states, in pertinent

---

[6] We note that contrary to Central Co-op's assertion, the business judgment rule does not require the court to defer to the Board's decision to terminate Taft's membership. See Scott v. Trans-Sys., Inc., 148 Wn.2d 701, 709, 64 P.3d 1 (2003).

part:

> 2.9 <u>Termination of Membership</u>. . . . Membership may be terminated involuntarily by the Board for cause after the member is provided written notice of the reasons for the proposed termination and has an opportunity to respond in person or in writing. Cause may include but is not limited to intentional or repeated violation of any provision of the Co-op's bylaws or policies, actions that will impede the Co-op from accomplishing its purposes, actions or threats that adversely affect the interests of the Co-op or its members, willful obstruction of any lawful purpose or activity of the Co-op, or breach of any contract with the Co-op.

Under bylaw 2.9, the Board may involuntarily terminate an individual's membership for cause. The bylaws define "cause" to include "intentional or repeated violation of any provision of the Co-op's bylaws or policies." The plain language of bylaw 2.9 entitles a member to "written notice of the <u>reasons</u> for the proposed termination" and an "opportunity to respond" before the Board terminates the membership.[7]

Central Co-op asserts the April 28, 2014 letter complied with the bylaws. Taft contends the Board did not comply with the notice requirements of the bylaws because the April 28 letter did not identify the "repeated" violations of Central Co-op's bylaws or policies justifying termination of her membership. Viewing the evidence in the light most favorable to Taft, there are disputed issues of material fact as to whether Taft received notice of repeated violations of Central Co-op bylaws or policies.

The April 28 letter states the Board decided to terminate Taft's membership based on her "continued refusal to refrain from . . . verbal abuse of shoppers and workers" and "repeatedly" violating co-op policies by "creating an unsafe shopping

---

[7] Emphasis added.

experience for customers as well as mistreating staff." But the April 28 letter does not identify the repeated violations. The letter does not provide any detail about the repeated violations or her continued refusal to refrain from "verbal abuse" of shoppers and co-op employees.

Viewing the evidence in the light most favorable to Taft, she was aware of only the June 27, 2013 interaction with Central Co-op staff. Taft admits that during the December 6, 2013 telephone call with Peterson, he "indicated that there had been an incident on November 14, 2013." But Taft states she "told Mr. Peterson that no incident had taken place on November 14." Peterson told Taft she "would be getting a letter soon" explaining why she was no longer welcome at the co-op. Taft states she never received a letter from Peterson. Taft's declaration states, in pertinent part:

> [T]he very first time I saw Mr. Peterson's undated letter to me about the revocation of shopping privileges was when I received a copy of Mr. Peterson's June 24, 2015 declaration in support of the motion for summary judgment.

The February 21, 2014 letter from Taft's attorney to Central Co-op also states Taft did not receive the letter Peterson said he sent in December. The February 21 letter states, in pertinent part:

> Mr. Petersen [sic] also stated that a letter from him would be coming in the mail verifying that her shopping privileges were terminated. Ms. Taft (and Mr. Champernowne) have not received this letter.

Because there are material issues of fact as to whether Taft received notice in compliance with the co-op bylaws, we reverse summary judgment dismissal of the

lawsuit against Central Co-op and remand for trial.[8]

WE CONCUR:

---

[8] We reject Taft's argument that the court must "carefully scrutinize" the decision to terminate her membership because her membership is a property interest. 12A <u>Fletcher Cyclopedia of the Law of Corporations</u> § 5704, at 795, does not address heightened judicial scrutiny of termination decisions and does not support her argument.