**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JULY 8, 2021

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 8, 2021

ERIN L. LENNON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| CONWAY CONSTRUCTION COMPANY, | ) ) ) ) | |
| Petitioner / Cross-Respondent, | ) ) | No. 98753-0 |
| v. | ) ) | En Banc |
| CITY OF PUYALLUP, | ) ) | |
| Respondent / Cross-Petitioner. | ) ) ) | Filed: July 8, 2021 |

GONZÁLEZ, C.J.—The city of Puyallup (City) hired Conway Construction

Company to build a road. The contract between the two allowed the City to

terminate the contract early either for its convenience or on Conway's default, but

a termination for convenience would result in more costs for the City. The City

did terminate the contract partway through construction, claiming Conway

defaulted. After a lengthy bench trial, the trial court concluded that Conway was

not in default when the City terminated the contract and converted the termination

into one for convenience. We affirm the trial court's decision. We also hold that

the City is not entitled to an offset for any defective work discovered after

termination because the City did not provide Conway with the contractually

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

required notice and opportunity to cure. Finally, we hold that Conway is entitled to attorney fees under the terms of the contract. Accordingly, we affirm in part and reverse in part.

## BACKGROUND

The City contracted with Conway to build the nation's first arterial roadway with pervious concrete. As is customary with public works projects, the City set the terms of the project and wrote the contract. The contract included several documents. As a transportation project, the contract incorporated the Washington State Department of Transportation's Standard Specifications for Road, Bridge, and Municipal Construction (Standard Specifications). The City amended and added terms to the Standard Specifications. Additionally, the City drafted a separate project-specific contract (Public Works Contract) that provided separate contract terms. Along with the project manual and other bid documents, these documents governed the project.

There were a number of problems with the project. The City issued a number of nonconformance reports to Conway in early 2016, which warned Conway that some of its work did not meet contract specifications. The City also saw unsafe work conditions and reported them to the Washington State Department of Labor & Industries (L&I).

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

Citing the notice requirements in the Standard Specifications, the City gave Conway a notice of suspension and breach of contract on March 9, 2016. The notice identified nine contract violations.[1] Under the contract, Conway had 15 days to remedy these violations. Conway disputed the violations but also took steps to remedy the breaches. On several occasions, Conway asked to meet and discuss the City's concerns. The City's engineer refused, stating that "the required actions seem to be clear, therefore I don't see the need for a meeting." Trial Ex. 46, at 2.

On March 25, 2016, the City issued a final notice of termination for default to Conway and withheld further payments. Several weeks later, L&I cited Conway for a serious safety violation. Roughly four months after termination, the City found more defective concrete panels that needed to be replaced.

Conway sued the City, arguing that the termination for default was improper and should be converted to a termination for convenience under the contract. After a lengthy trial, the trial court found that the termination was for convenience. The court denied the City an offset for Conway's defective work and awarded Conway damages including attorney fees.

---

[1] These violations were 1) Wall C was installed incorrectly, 2) a wire between signal poles to hang traffic signals needed to be removed, 3) disputed payment for permeable ballast, 4) permeable ballast was contaminated by other construction activities, 5) 34 pervious concrete panels were nonconforming, 6) Conway was hampering the work of utilities in the area and needed to improve coordination, 7) additional traffic control signs were needed, 8) the installed concrete needed to be maintained by sweeping, and 9) jobsite safety violations. Trial Ex. 44.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

The Court of Appeals largely affirmed, but it reversed Conway's award for attorney fees. The City and Conway both sought discretionary review, which we granted. Associated General Contractors of Washington submitted an amicus brief on the issue of attorney fees in support of Conway.

ANALYSIS

A trial court's findings of fact are reviewed for substantial evidence, "which requires that there be a sufficient quantum of evidence in the record to persuade a reasonable person that a finding of fact is true." *Pardee v. Jolly*, 163 Wn.2d 558, 566, 182 P.3d 967 (2008) (citing *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). We review conclusions of law de novo. *Id.* (citing *Sunnyside*, 149 Wn.2d at 880).

I.    Termination

A termination for default must be based on good cause, such as the contractor's failure to meet the requirements of the contract. *See 5860 Chi. Ridge, LLC v. United States*, 104 Fed. Cl. 740, 755 (2012). By contrast, a termination for convenience clause in a contract generally gives a public entity "the right to terminate 'at will,'" assuming no bad faith or abuse of discretion. *John Reiner & Co. v. United States*, 163 Ct. Cl. 381, 390, 325 F.2d 438 (1963).[2]

---

[2] Termination for convenience clauses were developed in federal government contracts after the Civil War to allow the government to cancel military contracts "when changes in wartime technology or cessation of conflict rendered them unnecessary." *SAK & Assocs. v. Ferguson*

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

These two forms of termination result in different financial consequences for the contractor. Here, the contract specifies that under a termination for default, the contractor must pay any extra costs the City incurs to complete the project, including a new contractor's higher prices, and payments are withheld until the project is finished. Trial Ex. 1, at 1-81 (Standard Specifications section 1-08.10(1)). Under the termination for convenience clause, however, the contractor is entitled to be paid for actual work performed until the date of termination. Trial Ex. 1, at 1-88 (Standard Specifications section 1-09.5).

The Standard Specifications incorporated into the contract automatically convert an improper termination for default into a termination for convenience. Trial Ex. 1, at 1-81 (Standard Specifications section 1-08.10(1) (stating that in the event a "notice of termination for default has been issued and it is later determined for any reason that the Contractor was not in default, the rights and obligations of the parties shall be the same as if the notice of termination had been issued pursuant to Termination for Public Convenience")). The issue here is whether the termination for default was proper; if not, it becomes a termination for convenience.

A. Termination language

---

*Constr., Inc.*, 189 Wn. App. 405, 410, 357 P.3d 671 (2015) (citing *Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1540 (Fed. Cir. 1996)). Termination for convenience clauses are now commonly used in state and local public works contracts. *Id.*

5

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

By its terms, the Public Works Contract prevails over the Standard Specifications if there is a conflict. Trial Ex. 5, at 1 (Public Works Contract). This matters because the Standard Specifications give Conway the opportunity to remedy defects before the City can terminate for default. The Public Works Contract is silent on this point. The City contends that the termination provisions of the Standard Specifications conflict with the Public Works Contract so that the Standard Specifications' notice and opportunity to cure requirements are inoperative. The Public Works Contract provides that:

> **22. Termination.** The City shall be entitled to terminate this Contract for good cause. "Good cause" shall include, but shall not be limited to, any one or more of the following events:
> . . . .
> d. Contractor's failure to comply with Federal, state or local laws, rules or regulations;
> . . . .
> f. Contractor's breach of any portion of this Contract.

Trial Ex. 5, at 8 (Public Works Contract). The Standard Specifications contain a more elaborate provision:

> **1-08.10(1). Termination for Default**.
> The Contracting Agency may terminate the Contract upon the occurrence of any one or more of the following events:
> . . . .
> 4. If the Contractor disregards laws, ordinances, rules, codes, regulations, orders or similar requirements of any public entity having jurisdiction;
> 5. If the Contractor disregards the authority of the Contracting Agency;
> 6. If the Contractor performs Work which deviates from the Contract, and neglects or refuses to correct rejected Work; or

6

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

> 7. If the Contractor otherwise violates in any material way any provisions or requirements of the Contract.
>
> Once the Contracting Agency determines that sufficient cause exists to terminate the Contract, written notice shall be given to the Contractor and its Surety indicating that the Contractor is in breach of the Contract and that the Contractor is to remedy the breach within 15 calendar days after the notice is sent . . . If the remedy does not take place to the satisfaction of the Contracting Agency, the Engineer may, by serving written notice to the Contractor and Surety either:
>> 1. Transfer the performance of the Work from the Contractor to the Surety; or
>> 2. Terminate the Contract.

Trial Ex. 1, at 1-80.

The City argues that section 22 of the Public Works Contract "supersedes" the Standard Specifications and that because Conway "failed to comply with federal, state, or local laws, the City was justified" in termination regardless of whether Conway made attempts to remedy the breaches. Pet. for Review (City) at 16. But section 22 would prevail over the Standard Specifications only if there was a direct conflict between those two sections. The City identifies no conflict. The two provisions are instead complimentary. We conclude that section 22 simply identifies additional grounds for default and elaborates on the parties' obligations. Accordingly, both provisions govern the termination here.

B. Standard for termination

The parties also disagree over the proper standard for termination under the contract once the City gave Conway notice and an opportunity to remedy the

7

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

default. The City argues that the trial court should have asked whether the City was *satisfied* with Conway's efforts to remedy the breach. The trial court agreed with Conway that the proper test instead was whether Conway neglected or refused to correct defective work. If Conway made an attempt to remedy the defaults, then termination was improper. We hold that both parties are correct—the contract specifies that Conway needed to show that it was not neglecting or refusing to cure defective work and the City needed to be reasonably satisfied with those efforts.

The contract allows termination based on defective work only if the contractor "neglects or refuses to correct rejected Work." Trial Ex. 1, at 1-80 (Standard Specifications section 1-08.10(1)). Conway took steps to remedy the defaulting conditions, reached out to the City to determine whether these efforts were sufficient, and repeatedly requested a meeting. Given these facts, we find substantial evidence supports the trial court's conclusion that Conway was not neglecting or refusing to correct the defects.[3]

The City is also correct that the contract includes language allowing it to terminate if the remedy does not take place to its satisfaction. But the City must act reasonably and in good faith in deciding whether it is satisfied. There is an "'implied duty of good faith and fair dealing'" in Washington contracts that

---

[3] We recognize that the trial court may have incorrectly applied the defective work standard to safety violations, but any error was harmless because the safety breach was cured within 15 days.

8

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

"'obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.'" *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112-13, 323 P.3d 1036 (2014) (plurality opinion) (quoting *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)). This duty "arises 'when the contract gives one party discretionary authority to determine a contract term.'" *Id.* at 113 (quoting *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 738, 935 P.2d 628 (1997)). "[W]hen a contract provides that one party shall perform to the satisfaction of the other party, and the contract also provides guidelines within which the party must perform, the right to terminate exists only when the latter party's dissatisfaction is based upon *reasonable grounds*." *Jones v. Hollingsworth*, 88 Wn.2d 322, 327, 560 P.2d 348 (1977) (emphasis added) (citing *Yarno v. Hedlund Box & Lumber Co.*, 129 Wn. 457, 469, 225 P. 659, 227 P. 518 (1924)).

Fairly read, the trial court's findings of fact establish that the City's actions leading up to termination were unreasonable or made in bad faith. While the trial court did not expressly determine whether the City was, or should have been, satisfied, the failure to do so explicitly was harmless. The trial court found that after the City issued the suspension notice, the City's "refusal to discuss further details raised by Mr. Conway . . . implicated the concerns of bad faith on the City's part." Clerk's Papers (CP) at 2471 (Finding of Fact (FF) 46). The trial court

9

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

noted, "[The City engineer] testified that he had lost confidence in Conway's ability to perform the Contract to his satisfaction . . . . Loss of confidence, however, is not grounds for default termination." CP at 2476-77 (FF 71). We conclude that the City's withholding of "satisfaction" with the proposed remedy was unreasonable.

C. Burden of proof

The City also claims that its burden was to show only that Conway initially defaulted. We find contrary federal case law persuasive. In contract disputes where the United States is a party, the government has the burden of proving whether termination of a contract for default was justified. *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987). Courts will "sustain[] a default termination if justified by circumstances *at the time of termination.*" *Kelso v. Kirk Bros. Mech. Contractors, Inc.*, 16 F.3d 1173, 1175 (Fed. Cir. 1994) (emphasis added) (citing *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1277 (Fed. Cir. 1985)). Analogously, we find the City bears the burden here. We agree with the trial court that the City failed to meet its burden to show that termination was justified by a continuing default at the time of termination.

The City's termination of the contract was not properly for default and therefore will be converted to a termination for convenience. The contract language specifies that a default based on defective work is proper only if the

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

contractor neglected or refused to correct the defective work, which Conway did not. While the City had the right to be satisfied with the proposed remedy, it did not have the right to unreasonably withhold satisfaction. Finally, the City failed to demonstrate that Conway was in default at the time of termination. Conway made significant efforts to address the nine issues in the notice of suspension, and repeatedly asked for a meeting to discuss these efforts. We affirm the trial court that the termination was for the City's convenience.

## II.    Offset for Defective Work

The trial court found that the City was not entitled to an offset for defective work discovered after termination where no notice was provided to Conway. We affirm.[4]

The contract language states that the City "will not pay for . . . defective [w]ork." Trial Ex. 1, at 1-28 (Standard Specifications Section 1-05.7). But in the event of termination, the contract requires the City to provide notice and an

---

[4] We note that the courts below assumed that by terminating for convenience, the City breached the contract. We disagree. The contract specified that an improper termination for default would be treated as a termination for convenience, which allows the City to end the contract without breaching it. Termination for convenience clauses are intended, in part, to protect the governmental entity from liability for breach of contract. *Maxima Corp. v. United States*, 847 F.2d 1549, 1552 (Fed. Cir. 1988) ("Thus the contractor, instead of receiving compensation for governmental breach of contract based on classical measures of damages, is limited to recovery of 'costs incurred, profit on work done and the costs of preparing the termination settlement proposal. Recovery of anticipated profit is precluded.'" (quoting Ralph C. Nash Jr. & John Cibinic Jr., FEDERAL PROCUREMENT LAW 1104 (3d ed. 1980))). However, this error was harmless, as the trial court appropriately allocated damages under the contract's requirements for a termination for convenience. Regardless of this error, the City's failure to provide notice and a right to cure was a "fatal defense to the City's post-termination claims." CP at 2704.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

opportunity to cure defective work.[5]  The City argues it should be able to claim an offset for defective work discovered after terminating the contract for convenience. This is a question of first impression in this state, and we find *Shelter Products, Inc. v. Steelwood Construction, Inc.*, 257 Or. App. 382, 402, 307 P.3d 449 (2013), persuasive.[6]  In that case, the Oregon Court of Appeals held that the terminating party was not entitled to offset allegedly defective work after it terminated the contract for convenience without giving the other party the contractually required notice of the defects and an opportunity to fix them.  *Id.* at 398-99.  The terminating party could not "pursue two inconsistent paths simultaneously: both terminating the agreement for convenience *and* seeking damages against [the non-terminating party] as if it had terminated for cause and given [the non-terminating party] an opportunity to cure."  *Id.* at 400.

While *Shelter Products* is instructive, our decision here is based on the plain language of the contract.  The contract required the City to provide notice to

---

[5] We agree with the Court of Appeals that section 1-09.5(4) of the Standard Specifications, which calculates payment by subtracting the estimated cost to complete the work "in the case of a deletion or partial termination," does not apply here because the contract was terminated in its entirety.  Trial Ex. 1, at 1-88.

[6] The City argues that *Shelter Products* conflicts with *Ducolon Mechanical Inc. v. Shinstine/Forness, Inc.*, 77 Wn. App. 707, 893 P.2d 1127 (1995).  We disagree.  In *Ducolon*, a subcontractor was wrongfully terminated because the contractor failed to provide proper notice, but the subcontractor also exercised bad faith.  *Id.* at 708.  The offset there was against an award of restitution, which is measured by the benefit conferred on one party; it is appropriate to offset the award by that party's damages.  *Id.* at 713-14.  Here, this is not a restitutionary award and the parties have not breached the contract.  The same damage analysis does not apply.

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

Conway of defective work.  The trial court found that notice was not provided.

Furthermore, the City did not prove Conway was at fault for the defects.  CP at

2702 (Conclusion of Law 16) ("Conway was given no opportunity to cure alleged

de[f]ective work, or complete partially finished work. In fact, neither Conway nor

its surety were permitted to even timely investigate the potential cause or causes of

the City's defective work claims. Such an investigation would have helped clarify

whether Conway's performance was actually defective, or whether the conduct of

others (including the City) was the source of the alleged defect.").

We recognize that this result may seem unfair.  If the City had given

Conway notice and an opportunity to cure, the City may have been able to prove

that the defects indeed resulted from deficient work, rather than deficient plans or

specifications, and the City would likely have been able to recover the cost of the

defective work.  But our decision today is bound by the terms of the contract.  We

affirm that the City may not claim an offset for the subsequently discovered

defective work.

III.    Attorney Fees

Finally, we must decide whether Conway is entitled to contractual attorney

fees given the very different fee provision in RCW 39.04.240.  RCW 39.04.240

provides a prevailing party attorney fees in public works contract cases under

specific circumstances.  The statute incorporates RCW 4.84.250 through RCW

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

4.84.280, which provide that the plaintiff "shall be deemed the prevailing party . . .

when the recovery, exclusive of costs, is as much as or more than the amount

*offered in settlement* by the plaintiff." RCW 4.84.260 (emphasis added). This

language effectively requires a settlement offer to be made in order to recover fees.

Conway did not make a settlement offer, so it is not entitled to attorney fees under

the statute.

However, Conway is entitled to fees under the contract. The City added a

provision for attorney fees in the contract:

> **1.09.11 Disputes and Claims.**
> . . . .
> The Owner and Contractor each agree that in the event either of said
> parties brings an action in any court arising out of this Contract, the
> prevailing party in any such lawsuit shall be entitled to an award of its cost
> of defense.

Trial Ex. 2, at 223 (City of Puyallup Project Manual).[7] Conway is entitled to fees

under this contractual provision because RCW 39.04.240 is not an exclusive fee

provision. We impliedly held this in *King County v. Vinci Construction Grands*

*Projets/Parsons RCI/Frontier-Kemper, JV*, 188 Wn.2d 618, 398 P.3d 1093 (2017).

In *Vinci*, we held that the public works statute allowing attorney fees was not

intended to prevent a party from obtaining equitable fees when applicable. Under

---

[7] The parties note that the attorney fees provision in the contract is unilateral (presumably drafted in City's favor), and Conway argues to construe it bilaterally. Under RCW 4.84.330, a unilateral fee provision is treated as a bilateral one. *Hawk v. Branjes*, 97 Wn. App. 776, 780, 986 P.2d 841 (1999) (citing *Herzog Alum., Inc. v. General Am. Window Corp.*, 39 Wn. App. 188, 196-97, 692 P.2d 867 (1984)).

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

the American rule for awarding attorney fees, a court may award fees "only when doing so is authorized by a *contract provision*, a statute, or a recognized ground in equity." *Id.* at 625 (emphasis added) (citing *Hamm v. State Farm Mut. Auto Ins. Co.*, 151 Wn.2d 303, 325, 88 P.3d 395 (2004)). There was no evidence that the legislature intended to displace those other options. *Id.* at 628 ("There is no language within . . . RCW 39.04.240 suggesting that the legislature intended to exclude all other means of recovering attorney fees. . . . There is nothing in the legislative history indicating that RCW 39.04.240 was intended to proscribe alternative fee remedies.").

The legislature passed the attorney fees statute to "'encourage settlement[],'" because in public works cases, the public entity often "'react[s] to litigation as if their attorneys are free.'" *Id.* at 629 (quoting H.B. REP. ON ENGROSSED S.B. 6407, at 2, 52d Leg., Reg. Sess. (Wash. 1992)). In committee discussions on the bill, proponents explained that public entities, who are the sole drafters of public works contracts, do not usually include attorney fees provisions, leaving contractors without a way to recover attorney fees. Hr'g on Substitute H.B. 1671 Before the H. Judiciary Comm., 56th Leg., Reg. Sess. (Wash. Feb. 22, 1999) at 22 min., 50 sec. through 28 min., 3 sec., http://digitalarchives.wa.gov/Record/View/EDD5030030EDFA9EE933E814B3FA 6981; *see also* Local Government Fiscal Note to Engrossed S.B. 6407, 52nd Leg.,

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

Reg. Sess. (Wash. 1992) (prepared by Dep't of Cmty. Dev.) ("[c]urrently, public works contracts usually provide that attorneys' fees be paid by the respective parties"). The bill was intended to "level th[e] playing field" for contractors by providing a pathway to fees that would otherwise be unavailable. Hr'g on S.H.B. 1671 Before the H. Judiciary Comm., 56th Leg., Reg. Sess. (Wash. Feb. 22, 1999) at 23 min., 49 sec., http://digitalarchives.wa.gov/Record/View/EDD5030030EDFA9EE933E814B3FA 6981.

But the existence of this statutory provision does not prevent the parties from negotiating an additional attorney fees provision. The contractual provision is not a waiver of RCW 39.04.240. The language in the contract *grants* fees and would not prevent a party from being eligible for statutory fees if they had made an offer of settlement and were considered the prevailing party. RCW 39.04.240 was meant to act as a form of protection for contractors who could not otherwise receive attorney fees, not to bar other forms of recovery.

While Conway is not entitled to attorney fees under the statute because it did not make a timely settlement offer, the contract language permits contractual fees regardless. We reverse the Court of Appeals on this issue.

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

CONCLUSION

We affirm in part and reverse in part. We affirm that the City's termination of Conway was not properly for default and was therefore a termination for convenience. The City terminated Conway even after Conway had made attempts to remedy the defective work. Conway was no longer in breach at the time of termination, so the termination for default was not justified. Even though the contract allowed the City to terminate for default if it was not reasonably satisfied with the remedy attempts, the City's withholding of approval was unreasonable.

Because this was a termination for convenience, we also affirm that the City is not entitled to an offset for any defective work discovered after termination where Conway was not provided with notice and an opportunity to cure.

Finally, while Conway is not entitled to fees under RCW 39.04.240 because it never made a settlement offer, the contract here included an enforceable fee provision. Accordingly, we reverse the Court of Appeals on this issue and reinstate the trial court's award of attorney fees to Conway. Additionally, Conway's RAP 18.1 request for an award of attorney fees and costs for appellate review is granted.

*Conway Constr. Co. v. City of Puyallup*, No. 98753-0

González, C.J.

WE CONCUR:

Johnson, J.

Gordon McCloud, J.

Madsen, J.

Yu, J.

Owens, J.

Montoya-Lewis, J.

Stephens, J.

Whitener, J.

18