# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DAREN MORGAN, | No. 56650-8-II |
| Respondent, | |
| v. | |
| JOHN FORSYTH, MELINDA BENNER; and MELCORP, INC., a Washington Corporation, | UNPUBLISHED OPINION |
| Appellants. | |

MAXA, J. – John Forsyth, his wife Melissa Benner, and Melcorp, Inc. (collectively Forsyth appellants) appeal the trial court's judgment in favor of Daren Morgan against them, in which the court found that Forsyth formed a partnership with Morgan and then breached the partnership agreement and fiduciary duties.

This case involves a business called Cliff's Tavern, the underlying property, and houses on two adjacent properties. Forsyth and Jeffrey Boltz were involved in a transaction that would allow them to operate the tavern and obtain an option to purchase all three properties. Morgan invested $260,000 with regard to this transaction. The parties dispute the nature of this investment. They also dispute whether Morgan was investing in a partnership among him, Boltz, and Forsyth or in Boltz's company, J Squared, LLC.

Eventually, Benner formed Melcorp in order to obtain and hold the liquor and gaming licenses for the tavern. Boltz, Forsyth, and Morgan were involved in the operation of the tavern.

Later, a dispute arose between Morgan and Forsyth that resulted in Morgan being locked out of the tavern.

The option to purchase the three properties expired. Subsequently, Forsyth and Benner formed a new company and purchased the two properties adjacent to the tavern. They also continued operating the tavern.

Morgan filed a lawsuit against Forsyth, Benner and Melcorp, alleging that he had formed a partnership with Boltz and Forsyth and that Forsyth had breached the partnership agreement and his fiduciary duties. After a bench trial, the trial court ruled in favor of Morgan and awarded him over $269,000 in restitution damages.

The Forsyth appellants challenge a number of the trial court's findings of fact and conclusions of law. We hold that substantial evidence supports the challenged findings of fact and that the trial court did not err in entering the conclusions of law. Accordingly, we affirm the trial court's judgment.

## FACTS

*Background*

Cliff's Tavern was located on property at 8702 NE St. Johns Road and was adjacent to two houses located at 8608 and 8614 NE St. Johns Road. Around August 2017, Michael Canton, through his company MLC Ventures, LLC, bought Cliff's Tavern and leased the two houses from Larry Stevens and the Stevens Family Trust. Canton purchased the tavern for $100,000 and paid $40,000 as a down payment. He also obtained an option to purchase all three properties for $1 million. According to the two-year lease agreement, MLC Ventures had to pay $3,000 a month the first year and $4,000 a month the second year. The lease and option to purchase expired on September 2019. Canton shut the tavern down because he thought the land and the buildings were more valuable.

Boltz owned Three Monkeys Bar and Grill in Vancouver through his company, J Squared. He heard that MLC Ventures had purchased Cliff's Tavern, and he met with Canton to discuss the properties.

*Trial Testimony*

Boltz testified that he and Canton discussed the option to purchase the properties and also discussed remodeling the tavern and getting it reopened. Boltz asked Canton to form a partnership, and they signed a letter of intent to form one.

Boltz understood the intent to form a partnership meant that he and Canton would work jointly to market and develop the properties, and get the tavern up and running. Canton testified that he never intended to sell the tavern. But Boltz testified that at no point did Canton say that the partnership did not include ownership and operation of the tavern. Boltz believed that the tavern was always a part of the partnership. Canton testified that he was never in a partnership with Boltz, but emails between Canton and Boltz described their relationship as partners.

Boltz testified that in furtherance of the partnership, he started looking for people to lease the houses and began to remodel the tavern. Boltz then approached Forsyth about being a partner with him, and Forsyth agreed. Forsyth testified that he understood that he and Boltz were going to be partners with Canton on the two houses, the tavern, and the three properties.

Morgan owned a tavern, Top Shelf, in Vancouver through his company Top Shelf, LLC. He and Boltz were long-time friends. Morgan testified that Forsyth approached him about joining a partnership consisting of Boltz, Forsyth, and Canton by buying out Canton's share. They needed $260,000 to buy out Canton, and they approached Morgan for the money. According to Boltz, $60,000 would finalize the purchase between Canton and Stevens for the tavern business and $200,000 would cover the option to purchase the properties. Boltz was clear

that the transaction included the purchase of the tavern. Canton wrote in an email to Boltz that after the $60,000 went to Stevens to complete the tavern purchase, Boltz would be free to do whatever he wanted with the tavern.

Morgan testified that Forsyth and Boltz showed him around the property and detailed their plan to turn the tavern and one of the houses on the property into a larger operation. According to Morgan, the three agreed to form a partnership – to be partners. Each had a one-third interest in the partnership. Morgan's role was to invest the $260,000 and to manage the daily operations of the tavern. The partnership eventually would own and operate the tavern, the two houses, and all three underlying properties. Morgan understood the plan was to remodel the tavern and get it up and running again.

Morgan testified that Forsyth told him that through Benner, they established Melcorp, Inc. to own and operate Cliff's Tavern. Benner established Melcorp to help open the tavern and obtain its liquor and gaming license since Forsyth could not get it because of his criminal history and Boltz was having financial trouble. Morgan testified that Benner was not fully a part of the partnership he had with Boltz and Forsyth, but she did support the partnership.

Morgan went to a hard money lender to borrow $260,000 by refinancing his home. Morgan used the loan to form the partnership. He gave three checks totaling $260,000 to Forsyth. One of the checks had J Squared written on the memo line, pursuant to Forsyth's instruction. The checks came from the account of Morgan's company Top Shelf, LLC. Morgan said he had to put the money in the Top Shelf account because it was the only checking account he had at the time. But he testified that the money was his own personal funds from having to refinance his home. Morgan never had any intent for Top Shelf to be one of the partners.

4

In the meantime, Morgan assisted in the remodel of the tavern and in preparing the houses to rent. Morgan, Boltz and Forsyth each paid $1,000 toward the $3,000 rent payments on the houses. The tavern reopened in May 2018 with the help of Melcorp. Morgan testified that he ran the day to day operations of the tavern for the next six months. He said that he met weekly with Boltz and Forsyth to discuss business operations. After six months Forsyth took over day to day management.

After Canton paid Stevens for the tavern, Stevens met with Boltz at the tavern and liked what was happening there. Boltz testified that Stevens understood that Boltz was buying the tavern along with the option and the lease.

Morgan testified that he, Boltz, and Forsyth met with an attorney in late 2018 or early 2019 in order to finalize the partnership and figure out a way to transfer the licenses from Melcorp to them. Morgan testified that he created Letterman Jacket, LLC for the purpose of transferring the business to the LLC. Boltz and Forsyth were supposed to be members of the LLC, but because of Boltz's bankruptcy and Forsyth's criminal history, Morgan was the sole member.

In April 2019, Boltz transferred the assets of J Squared, including its interest in the tavern and the option, to Letterman Jacket because of liquor board requirements. The liquor licensing board asked why the transfer required no compensation, and Morgan told them he already had provided the $260,000. Morgan admitted that he told the liquor licensing board that he had invested in J Squared. But he emphasized on cross-examination that he invested in the partnership, not in J Squared.

Morgan testified that in June or July of 2019, he and Forsyth had a dispute about finances and paying Morgan back for helping with Boltz's bar. Morgan testified that he then was locked

out of the tavern. Morgan and Boltz both testified that they never regained access to the tavern or properties after that.

Morgan was unable to exercise the option to purchase the property. He testified that if he had been able to continue operating the tavern, he would have been in a position to exercise the option. But Morgan acknowledged that he did not have the money or the financing to exercise the option and that in late 2018 or early 2019 he was ready to walk away from the option. And Boltz also testified that J Squared was unable to put together a deal to exercise the option.

Morgan testified that Benner, through a new company, JM Investing Company, LLC, exercised an option to purchase the tavern property and the property to the south for $800,000 with an $80,000 down payment. Morgan believed that his partnership with Boltz and Forsyth would have been able to make this same deal.

*Trial Court Ruling*

In October 2019, Morgan filed a lawsuit against Forsyth, Benner, and Melcorp regarding the partnership and breaches of the partnership agreement. The various witnesses testified as recited above. The trial court ruled in favor of Morgan and entered detailed findings of fact and conclusions of law.

The following were key findings of fact:

2. Jeffrey Boltz, defendant Forsyth and Benner, through another entity, J Squared, LLC entered into an agreement with MLC Ventures, LLC to purchase the lease option and right to operate Cliff's Tavern for $260,000.

3. Defendant Forsyth approached plaintiff about the opportunity and plaintiff invested $260,000 in exchange for a 1/3 interest in the business, lease and option to purchase. Plaintiff gave this money defendant Forsyth who in turn paid the money to MLC Ventures, LLC, the company that had previously purchased Cliff's Tavern and held a lease and option to purchase the real property, and a third party who had lent money to defendant Forsyth and Boltz for a down payment on the business purchase and lease/option.
. . . .

6

11. Defendants Forsyth and Benner formed JM Investing Company, LLC for purpose of purchasing the property at 8608 and 8614 NE Saint Johns Road.

12. On or about December 31, 2019 the real property at 8702 NE Saint Johns Road was sold to a third party and JM Investing Company, LLC purchased the real property at 8608 and 8614 NE Saint Johns Road for $800,000. The terms of the sale were an $80,000 down payment with the seller financing the balance of the purchase price via a land sale contract. Defendants did not inform plaintiff of either the opportunity or purchase.

Clerk's Papers (CP) at 118-19.

The following were key conclusions of law:

1. A partnership pursuant to RCW 25.05.055 was formed of plaintiff, Jeffery Boltz and the marital community of John Forsyth and Melinda Benner ("the Partnership")

2. The Partnership was formed to purchase and operate Cliff's Tavern as well as lease the property at 8702, 8608, and 8614 NE Saint Johns Road, Vancouver, Clark County Washington and pursue an option to purchase the leased property.
. . . .

5. Plaintiff is a 1/3 partner with Boltz and the marital community of Forsyth and Benner.
. . . .
8. Defendants Benner, Forsyth and Melcorp, Inc. acting individually and collectively breached their partnership agreement and fiduciary duties as partners by unlawfully expelling plaintiff from the Partnership and pursuing a partnership opportunity for themselves.

CP at 119-20.

The trial court also ruled that Morgan was entitled to damages, but reserved the amount of damages and the award of attorney fees for later determination.

The trial court then later issued supplemental findings of fact and conclusions of law. The court determined that Morgan was entitled to $269,133.28 in rescission damages: $260,000 for the amount invested and $9,133.28 for unreimbursed expenses relating to the tavern. The court also ruled that Morgan was entitled to prejudgment interest on his damages from June 30, 2019 and awarded Morgan his attorney fees in the amount of $51,064.50. The court entered

judgment against Forsyth's and Benner's marital community and Melcorp for the amounts of the rescission damages and attorney fees.

The Forsyth appellants appeal the trial court's judgment.

ANALYSIS

A.    STANDARD OF REVIEW

The Forsyth appellants challenge the trial court's findings of fact and conclusions of law. When reviewing a trial court's ruling following a bench trial, we determine whether substantial evidence supports the court's findings of fact and whether those findings support the court's conclusions of law. *Real Carriage Door Co., Inc. v. Rees*, 17 Wn. App. 2d 449, 457, 486 P.3d 955 (2021).

Substantial evidence supports a finding if the evidence is sufficient to persuade a rational, fair-minded person that the finding is true. *Id.* We view the evidence in the light most favorable to the prevailing party, including reasonable inferences. *Id.* We do not review the credibility of witnesses or weigh evidence. *Id.* We treat unchallenged findings of fact as verities on appeal. *Id.* We review the trial court's conclusions of law de novo. *Conway Constr. Co. v. City of Puyallup*, 197 Wn.2d 825, 830, 490 P.3d 221 (2021).

B.    CHALLENGED FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Finding that MLC Ventures Sold the Tavern to Boltz, Forsyth, and Morgan

The Forsyth appellants argue that substantial evidence does not support the trial court's findings that that MLC Ventures sold the tavern to Boltz, Forsyth/Benner and Morgan. We disagree.

Finding 2 states that MLC Ventures sold the right to operate the tavern along with the option to Boltz and Forsyth/Benner for $260,000. Finding 3 states that Morgan obtained a one-third interest in the business, lease and option to purchase.

Substantial evidence supports these findings. Boltz testified that the purchase of the tavern was part of his agreement with MLC Ventures and that Stevens understood that Boltz was buying the tavern. Boltz also testified that once Canton received $60,000, he said that Boltz could do whatever he wanted with the tavern. And it is undisputed that Boltz, Forsyth, and Morgan did in fact open and operate the tavern. We reject the Forsyth appellants' argument.

2. Finding that MLC Ventures Entered into a Transaction with Boltz and Forsyth

The Forsyth appellants argue that the trial court erred in finding that MLC Ventures entered into an agreement with Boltz and Forsyth/Benner through J Squared as opposed to just with J Squared. We disagree.

Finding 2 states that "Jeffrey Boltz, defendant Forsyth and Benner, through another entity, J Squared, LLC entered into an agreement with MLC Ventures, LLC to purchase the lease option and right to operate Cliff's Tavern for $260,000." CP at 118. The Forsyth appellants argue that because the transaction documents with MLC Ventures were in the name of J Squared, the finding should have stated that only J Squared entered into the agreement.

However, the fact that only J Squared purchased the right to operate the tavern and the option to purchase the properties is not determinative of whether Boltz, Forsyth, and Morgan were in a partnership to operate the tavern and hold the option to purchase. Boltz testified that he solicited Forsyth to become a partner with him regarding the transaction with MLC Ventures, and Forsyth agreed. And Forsyth testified that he understood that he and Boltz were going to be partners with Canton regarding the tavern and the properties. This evidence supports the trial

9

court's finding that Boltz and Forsyth were involved in the transaction with MLC Ventures "through" J Squared. CP at 118. And Morgan testified that he paid $260,000 to buy out Canton and join that partnership.

The fact that J Squared technically owned the assets did not preclude formation of the partnership. In fact, the partners engaged in some corporate maneuvering to further their purposes. Benner's corporation, Melcorp, was set up as the owner/operator of the tavern to obtain the necessary licenses. Morgan testified that he established Letterman Jacket to assume ownership of the tavern. And Boltz transferred J Squared's interest in the tavern and the properties to Letterman Jacket. None of this corporate maneuvering is inconsistent with the existence of the partnership.

Accordingly, we reject the Forsyth appellants' challenge to the trial court's finding 2 regarding the transaction with MLC Ventures.

3. Conclusion that Boltz, Forsyth, and Morgan Formed a Partnership

The Forsyth appellants argue that the trial court erred in ruling in conclusions 1 and 5 that a partnership was formed under RCW 25.05.005 consisting of Morgan, Boltz, and Forsyth/Benner. They claim that the entity involved in the relevant transactions was J Squared, an LLC, not a partnership. We disagree.

RCW 25.05.055, which is part of the Uniform Partnership Act, states,

(1) Except as otherwise provided in subsection (2) of this section, the association of two or more persons to carry on as co-owners [of] a business for profit forms a partnership, whether or not the persons intend to form a partnership.

(2) An association formed under a statute other than this chapter, a predecessor statute, or a comparable statute of another jurisdiction is not a partnership under this chapter.

Whether a partnership exists depends on the parties' intent and surrounding facts and circumstances, including actions and conduct. *DeFelice v. Emp. Sec. Dep't*, 187 Wn. App. 779, 789, 351 P.3d 197 (2015).

Here, Morgan testified on multiple occasions that he, Boltz, and Forsyth formed a partnership in which each partner had a one-third interest. He emphasized that he invested the $260,000 in the partnership. This testimony supported the trial court's finding that Morgan "invested $260,000.00 in exchange for a 1/3 interest in the business, lease, and option to purchase." CP at 118. And this finding supports the trial court's conclusion that a partnership was formed.

The Forsyth appellants rely on evidence that J Squared entered into the transaction with MLC Ventures and Canton, and on Boltz's testimony that Morgan was an investor in J Squared. They claim that the evidence shows that Morgan's $260,000 was an investment in J Squared and not in any partnership. And under RCW 25.05.055(2), the formation of an LLC precludes a finding that a partnership was formed.

However, because the fact that there was contradictory evidence does not mean that the trial court erred. We do not weigh evidence; our only role is to determine if trial court's findings support its conclusions. *Real Carriage Door*, 17 Wn. App. 2d at 457. We conclude that even though Forsyth may be able to point to evidence that a partnership was not formed and that Morgan invested only in J Squared, the trial court was free to disregard that evidence and instead accept the clear evidence that a partnership was formed and that Morgan did not invest in the LLC. Accordingly, we reject the Forsyth appellants' challenge to the trial court's conclusion regarding formation of the partnership.

11

4.    Finding that Morgan Personally Invested $260,000

The Forsyth appellants argue that the trial court erred in finding that Morgan personally invested the $260,000 rather than his company Top Shelf, LLC, and therefore erred in concluding that Morgan was the correct party to bring this action. We disagree.

Finding 3 states that Morgan invested $260,000. Conclusion 7 also refers to Morgan's investment of $260,000. The Forsyth appellants emphasize the undisputed evidence that the $260,000 was paid on checks from Top Shelf's account. They claim that this evidence shows that Top Shelf, not Morgan, was the only investor.

However, Morgan testified that the $260,000 was his own personal money that he obtained after refinancing his home through a hard money lender. He also stated that the Top Shelf checking account was the only one he had at that time, and that is why the checks were written from that account. Morgan emphasized that he never intended to have Top Shelf be a partner in the agreement.

Viewing the evidence in the light most favorable to Morgan, we conclude that the trial court did not err in finding that the $260,000 came from Morgan personally. Accordingly, we reject the Forsyth appellants' challenge to this finding.

5.    Finding that Morgan was Unable to Exercise the Option

The Forsyth appellants argue that the trial court erred in finding that Morgan was unable to exercise the option to purchase the properties after he was locked out of the tavern. We disagree.

Finding 9 states, "After being locked out of Cliff's Tavern, plaintiff was unable to exercise the option to the purchase the St. Johns Road property and the lease and option for the Saint Johns' property expired on September 1, 2019." CP at 119. The Forsyth appellants argue

that the testimony of both Morgan and Boltz shows that they were financially unable to exercise the option, and the failure to exercise the option was not the Forsyth appellants' fault.

Initially, the trial court never found that Morgan's inability to exercise the option was the Forsyth appellants' fault. The court merely found that Morgan could not exercise the option – which was undisputed.

Further, the Forsyth appellants again base their argument on evidence favorable to their position while disregarding contrary evidence. Morgan specifically testified that if he had not been locked out of the tavern, he would have been able to exercise the option. More significantly, he testified that *the partnership*, of which he was a member, would have been able to exercise the option. Finally, one of the partners – Forsyth – was able to exercise a similar option through his own corporation after discarding Morgan and Boltz.

Viewing the evidence in the light most favorable to Morgan, we conclude that the trial court did not err in finding that Morgan was unable to exercise the option. Accordingly, we reject the Forsyth appellants' challenge to this finding.

6.   Conclusion that Morgan Holds a Beneficial Interest in Boltz's Partnership Interest

The Forsyth appellants argue that the court erred in concluding that Morgan holds the beneficial interest in Boltz's one-third partnership interest. They claim that Letterman Jacket actually held the interest. We agree, but we conclude that this error is harmless.

The Forsyth appellants assigned error to conclusion 6, which states, "Plaintiff holds the beneficial interest in Boltz's 1/3 partnership interest." CP at 120. They did not assign error to finding 7, which states, "Boltz transferred his beneficial interest in the venture to Letterman Jacket, LLC." CP at 119. Therefore, this finding is a verity on appeal. *Real Carriage Door*, 17 Wn. App. 2d at 457.

The Forsyth appellants are correct that the trial court should have concluded, consistent with finding 7, that Letterman Jacket and not Morgan individually held Boltz's beneficial interest. The Forsyth appellants claim that Letterman Jacket and not Morgan should have been the plaintiff in this case. But they ignore the fact that even without the transfer from Boltz, the trial court concluded that Morgan personally owned a one-third interest in the partnership. Therefore, Morgan could sue based on that personal interest. And there is no indication that the trial court awarded Morgan any damages for Boltz's interest in the partnership. The court awarded only the $260,000 Morgan invested plus some additional expenses he incurred.

Accordingly, we hold that the erroneous conclusion that Morgan holds the beneficial interest in Boltz's one-third partnership interest is harmless.

7. Conclusion that Forsyth/Benner Breached the Partnership Agreement

The Forsyth appellants argue that the court erred in concluding that Benner, Forsyth and Melcorp breached their partnership agreement and fiduciary duties as partners by purchasing the property located at 8608 and 8614 NE Saint Johns Road. They note that JM Investments, not Forsyth/Benner and Melcorp, purchased those properties. We disagree.

Conclusion 8 states that "Defendants Benner, Forsyth and Melcorp, Inc. acting individually and collectively breached their partnership agreement and fiduciary duties as partners by unlawfully expelling plaintiff from the Partnership and pursuing a partnership opportunity for themselves." CP at 120.

The trial court did not find that Benner, Forsyth and Melcorp breached the partnership agreement and fiduciary duties because they personally bought the properties. It found a breach because they unlawfully expelled Morgan from the partnership and pursued what was a

14

partnership opportunity for themselves. The fact that they formed a corporation to usurp the partnership opportunity cannot shield them from liability. We reject this challenge.

D.  ATTORNEY FEES ON APPEAL

Morgan requests that we award him reasonable attorney fees on appeal under a theory of constructive fraud. The Forsyth appellants do not address this request, and therefore we assume they do not contest it. And the Forsyth appellants did not challenge the trial court's award of attorney fees to Morgan. *See In re Marriage of Laidlaw*, 2 Wn. App. 2d 381, 386, 409 P.3d 1184 (2018) ("unchallenged conclusions of law become the law of the case."). Accordingly, we award Morgan his reasonable attorney fees on appeal.

CONCLUSION

We affirm the trial court's judgment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
LEE, J.

_____
GLASGOW, C.J.